[No. 25650-5-I.    Division One.    July 29, 1991.]

SAFECO INSURANCE COMPANY OF AMERICA, ET AL, *Plaintiffs*, v. THOMAS F. MCGRATH, JR., ET AL, *Defendants*, FREDERICK HAYES, ET AL, *Appellants*, LUMBERMEN'S MUTUAL CASUALTY COMPANY, *Respondent*.

*Michael E. Withey, William J. Rutzick,* and *Schroeter, Goldmark & Bender P.S.,* for appellants.

*Robert C. Keating, William P. Schoel,* and *Keating, Bucklin & McCormack P.S.,* for respondent.

FORREST, J. — Thomas McGrath and Frederick Hayes were involved in an altercation in a restaurant parking lot in the early morning hours on February 12, 1980. McGrath and Hayes argued in the restaurant bar, confronted each other again outside, and McGrath shot Hayes in the neck.

McGrath claims that Hayes approached him in a menacing fashion and he acted in self-defense. He also claims at various times that (1) he did not intend to injure Hayes, but

only prevent Hayes's advance, and (2) he was not aiming at Hayes, but in that general direction.

McGrath was charged with two counts of second degree assault with a firearm. McGrath entered a plea of guilty to one count of second degree assault in exchange for dismissal of the other charges. Hayes and Frounfelter[1] then filed a complaint against McGrath alleging he negligently caused them damages. The jury found McGrath was negligent and awarded Hayes $1.3 million.[2]

McGrath's insurers, Safeco Insurance Company and Lumbermen's Mutual Casualty Company (Lumbermen), brought a declaratory judgment action, claiming McGrath's conduct was intentional and excluded from coverage.[3] McGrath counterclaimed for bad faith for failure to defend and failure to act in good faith. The court granted summary judgment in favor of the insurers and dismissed McGrath's counterclaim. McGrath subsequently assigned his rights to Hayes and Frounfelter. Hayes and Frounfelter appeal the summary judgments.[4] We reverse and remand.

## EXCLUSION LANGUAGE

■■ The pertinent portions of Lumbermen's policy read as follows:

---

[1] Frounfelter was a companion of Hayes on that evening.

[2] Frounfelter's claim for damages was dismissed.

[3] The insurers brought three summary judgment motions: (1) Following McGrath's guilty plea, but prior to conclusion of the civil action, the insurers sought, and were granted summary judgment. The insurers argued that the criminal plea established that McGrath knowingly and intentionally inflicted the injury. This judgment was subsequently reversed by this court, *Safeco Ins. Co. of Am. v. McGrath*, 42 Wn. App. 58, 708 P.2d 657 (1985), *review denied*, 105 Wn.2d 1004 (1986), on the basis that collateral estoppel would not apply to the guilty plea. (2) On May 28, 1988, the court denied the insurers' motion for summary judgment, based on McGrath's argument that he acted in self-defense. The court denied the motion, holding there was a factual issue that would be resolved in the civil suit. (3) The third summary judgment is the subject of this appeal.

[4] Safeco was dismissed from this appeal following a settlement. The parties therefore only appeal the court decision regarding the Lumbermen's policy. Frounfelter appeals only the dismissal of the bad faith claim.

The company agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages because of personal injury or property damage.

. . . .

**This policy does not apply:**

. . . .

(f) to any act committed by or at the direction of the insured with intent to cause personal injury or property damage;

For the exclusion under such policies to apply, the insured must intend both the physical act, here pulling the trigger, and the resulting injury, here wounding Hayes.[5] The subjective intent of the insured is controlling in interpreting such clauses.[6] Exclusionary language is construed against the insurer and in favor of coverage.[7]

These rules are not seriously challenged. Rather, Lumbermen asserts: (1) on these facts the law will impute to McGrath the intent to harm regardless of his subjective intent, citing *Rodriguez v. Williams*;[8] and (2) that McGrath's testimony establishes as a fact McGrath's subjective intent to injure. We disagree.

■ In *Rodriguez* the court held as a matter of law that where the insured admitted he intended to commit incest, his intent to injure the victim was established irrespective of his claim that he did not intend to injure. In *New York Underwriters Ins. Co. v. Doty*,[9] this court extended the imputation of intent to include not only sexual assaults but physical assaults. The rationale of these cases is that where the act is indissolubly bound with the injury, the law imputes the intent to injure to the insured, and the exclusion applies. McGrath's shooting in the direction of Hayes in and of itself does not establish intent to injure because under

---

[5] *See Western Nat'l Assur. Co. v. Hecker*, 43 Wn. App. 816, 719 P.2d 954 (1986).

[6] *Rodriguez v. Williams*, 107 Wn.2d 381, 729 P.2d 627 (1986).

[7] *Rodriguez*, at 386.

[8] 107 Wn.2d 381, 729 P.2d 627 (1986).

[9] 58 Wn. App. 546, 794 P.2d 521 (1990).

these circumstances there could be an intent merely to warn or to intimidate. Accordingly, the *Rodriguez* line of cases is inapplicable to the facts here present. Lumbermen's reliance on *Grange Ins. Co. v. Brosseau*[10] is misplaced. The distinguishing feature of *Brosseau* is that the court found "Brosseau's own words confirm he deliberately fired the shotgun at Anderson. The fact that he claims to have done so in self-defense in no way negates the deliberate nature of his act." *Brosseau*, at 96. In *Brosseau* there was no issue of fact as to the insured's intent to shoot the victim, but only whether the reason for the shooting made the exclusionary language inapplicable.

Lumbermen makes the same contention as to McGrath's testimony and affidavit; namely, that it establishes there is no factual issue as to McGrath's intent to injure Hayes.[11] We disagree. The record contains the following statements: "I fired the gun in their direction to stop them, never intending to shoot him or hit him or anything like that." "I did not expect to hit anybody." These statements, if believed, as we must on summary judgment, raise a material issue of fact as to McGrath's intent, regardless of other statements suggesting he did intend to injure. We acknowledge that read as a whole McGrath's affidavit and testimony supports a compelling and persuasive argument that McGrath did, in fact, intend to injure. However, we are not the trier of the fact and we are unable to say that reasonable minds could not reach a different conclusion, and, hence, summary judgment is inappropriate.

In this connection, Lumbermen argues that a party cannot create a genuine issue of material fact by offering an affidavit in opposition to summary judgment that con-

---

[10] 113 Wn.2d 91, 776 P.2d 123 (1989).

[11] Lumbermen relies on the following statements in McGrath's affidavit and subsequent deposition. "I did not intend to injure Hayes, only to stop him. *I thought I was aiming at his left shoulder.*" (Italics ours.)

"Q: When you say you were aiming the pistol in the general direction of those three people, where, to your best recollection, was it pointed?

"A: In the general area of Mr. Hayes' shoulder, I guess it would be his left shoulder."

tradicts clear sworn testimony.[12] However, the rule is not applicable to the facts here present. In this case the affidavit was given first. Even assuming that the affidavit standing alone would require a finding of intent to injure, we must consider it in light of McGrath's subsequent sworn testimony which is certainly not in flat contradiction thereto. Furthermore, McGrath's subsequent testimony offers an explanation of one of the principal affidavit statements relied upon by Lumbermen.[13] Whether this is a plausible explanation is for the finder of fact.

The factual pattern here present does not permit the imputation to McGrath of an intent to injure as a matter of law, nor does McGrath's testimony establish the intent as a matter of fact as to which reasonable minds cannot differ. Accordingly, the matter is remanded for trial.

Hayes has also assigned error to the court's decision to dismiss the bad faith claim against Lumbermen. While this issue was not extensively briefed or argued, we find that the court must be reversed. It is apparent from the record that the dismissal was treated as a formality following the decision that there was no coverage under the policy. Since the coverage issue is remanded for trial, it is necessary to also reverse the dismissal of the bad faith claim.

### INTOXICATION TESTIMONY

For an act to be intentional and excluded from coverage under McGrath's policy, the insured must have the mental capacity to form an intent to injure. An insured may be so intoxicated as to be unable to form an intent to commit an act, but this is a question for the trier of fact.[14] In opposition to Lumbermen's motion for summary judgment

---

[12]*Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 782 P.2d 1107 (1989); *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984).

[13]"Q: Weren't you actually aiming at Mr. Hayes' shoulder when you fired?
"A: No. I assumed after the shot was fired that he was shot in the shoulder because he said something — 'that son-of-a-bitch shot me.' And I assumed that he was shot in the shoulder. But I was aiming the — or pointing the gun in the direction of that area."

[14]*U.S.F.&G. Ins. Co. v. Brannan*, 22 Wn. App. 341, 589 P.2d 817 (1979).

the court was presented an affidavit from Dr. Vath[15] stating, "McGrath did not have the judgment or mental capacity to intend to discharge his firearm at or injure Rick Hayes or his companions." Over objection, the court admitted and considered the affidavit, but did not rely on it. Although it is insignificant for review of the summary judgment, Lumbermen urges us to address the issue since it will arise again if the matter goes to trial. We accept the request.[16]

We first note that in his trial testimony, Dr. Vath's conclusion was that McGrath was a problem drinker, might minimize effects of his alcohol consumption and that his *judgment was impaired.* Dr. Vath did not, however, offer an opinion as to McGrath's mental capacity on the night of the shooting. In fact, at trial the judge did not permit Dr. Vath to "put himself out there at the scene and make a judgment on what happened . . .."

Dr. Vath's affidavit adds nothing to his trial testimony, except conclusory language that apparently attempts to conform his opinion to recent case law that would allow insurance coverage when the insured is so intoxicated that he is unable to form the intent to injure. Ironically, it is questionable whether even this conclusory language is adequate.

Lumbermen cites *U.S.F.&G. Ins. Co. v. Brannan*[17] to require that the intoxication "must have destroyed the person's mental capacity to form the requisite intent to do the act." Any difference between "did not have the judgment or mental capacity to intend to discharge his firearm" and the statement that the intoxication must have "destroyed the person's mental capacity" is insufficient to justify rejection of the affidavit. However, impaired judgment is not remotely equal to the inability to form an intent to injure.

---

[15]Dr. Vath's qualifications as an expert on alcoholism are not challenged.

[16]Our ruling is based on the record before us. On retrial the trial court will base its decision on the record before it. However, it seems unlikely that there will be any significant difference as to the foundation of Dr. Vath's opinion since he testified in the Hayes versus McGrath trial and subsequently has signed the affidavit which is now before us.

[17]22 Wn. App. 341, 348, 589 P.2d 817 (1979).

Therefore, the use of "judgment" in Dr. Vath's formulation is not appropriate. The way it reads suggests that not having "judgment" is sufficient to establish not having the "capacity" to intend to act. That is not the case. Most people who commit crimes exercise very poor judgment, but that does not mean that they are unable to form the intent to commit the crime. Poor judgment is ubiquitous in life and its use in the expert's opinion is apt to confuse or mislead the jury. The determinative fact is whether McGrath did or did not have the capacity to form the requisite intent. If expert testimony is allowed, the opinion should be expressed in those terms.

■ Even if the affidavit opinion was phrased appropriately it would be inadmissible. It is well established that conclusory or speculative expert opinions lacking an adequate foundation will not be admitted.[18] Dr. Vath does not provide any additional foundation to that of his trial testimony for his new conclusion that McGrath's mental capacity was so impaired at the time of the shooting that he could not form an intent to injure. Accordingly, we turn to the foundation for his trial testimony which consisted of review of McGrath's and Hayes's deposition and trial testimony and the additional facts of the incident as developed at the Hayes versus McGrath trial.

McGrath concededly acts as a rational person under ordinary circumstances. The only basis for arguing that he was suffering from impaired mental capacity must be based on his drinking that evening.[19] Dr. Vath relies in large part

---

[18]*See, e.g., Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333 (7th Cir. 1989) (court must look behind expert's ultimate conclusion and analyze the adequacy of its foundation, especially when the opinion seems contrary to the other facts involved); *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666 (D.C. Cir. 1977) (although ER 703 broadened acceptable bases of expert opinion the court will still not allow unsupported assumptions and theoretical speculations); *Theonnes v. Hazen*, 37 Wn. App. 644, 681 P.2d 1284 (1984) (expert opinion based on speculation and conjecture may not go to jury).

[19]Dr. Vath appears to consider both McGrath's drinking, and the assault itself. For instance, he states, "to have a gun present at that time, certainly is another example of an error in judgment." He later states his opinion is based "primarily [on] the escalating amount that he was using and the amount that

upon McGrath's account that he had 11 to 13 drinks over the course of 9½ hours on the evening in question. The effect of measured amounts of alcohol on the ability to operate a motor vehicle has been the subject of extensive scientific research. Based upon such research, an expert may testify that after X drinks within Y hours an individual's ability to operate his automobile is affected, regardless of age, sex, weight or other physical qualities. Indeed, this scientific basis is what permits imposing criminal liability in drivers on the basis of the blood alcohol on their breath. Without such a basis regarding the effects of intoxication on the mental capacity to form an intent there is an inadequate foundation for an expert opinion that McGrath was unable to form the intent to injure on the night in question based on consumption.[20]

An adequate scientific basis for Dr. Vath's opinion is all the more necessary because the opinion is so contrary to the objective facts available to the trier of fact. We analyze the foundation for Dr. Vath's opinion in light of the following factors.

1. Nowhere in his affidavit, deposition or testimony did McGrath claim he was too intoxicated to be able to form the intent to injure Hayes.

2. No witness who observed McGrath on the evening in question testified that his conduct or conversation demonstrated any inability to form the intent to injure. This is in sharp contrast to the testimony often present in connection with DWI arrests where the defendant is incoherent, cannot perform simple physical or mental tests, or is confused as to time, place and date.

3. McGrath's detailed accounts of the events on the evening in question, the people he talked to, the things he did

---

he drank on the night that the assault occurred. And the fact that the assault occurred." We believe the assault itself is not an independent basis to prove a lack of intent because it is not necessarily irrational to fire a gun in the direction of a physically powerful individual who you feel constitutes a threat to your physical safety.

[20]See *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987).

including leaving the scene of the shooting, going home, disposing of the gun and calling a distinguished defense attorney are totally inconsistent with the destruction of his rational faculties by alcohol.

We see no distinction between the existence of the capacity to form intent in a criminal case and a civil case. It is well settled that to secure an intoxication instruction in a criminal case there must be substantial evidence of the effects of the alcohol on the defendant's mind or body.

> In every case requiring an intoxication instruction, there has been substantial evidence of the effects of the defendant's drinking. *E.g.*, *State v. Rice*, 102 Wn.2d 120, 683 P.2d 199 (1984) (slurred speech, lack of coordination, inability to feel pain); *State v. Brooks*, 97 Wn.2d 873, 651 P.2d 217 (1982) (lack of coordination, swallowed a spider); *State v. Jones*, [95 Wn.2d 616, 628 P.2d 472 (1981)] (eyes glassy, speech slurred, considered drunk by arresting officers); *State v. Washington*, 34 Wn. App. 410, 661 P.2d 605 (1983) (erratic driving, considered drunk by police).
>
> It is evident to us that the law stated in *State v. Simmons*, [30 Wn. App. 432, 635 P.2d 745 (1981), *review denied*, 97 Wn.2d 1047 (1982)] is unchanged, and that the failure of recent opinions to mention the effect requirement was inadvertent. The evidence here did not support the requested instruction.

(Footnote omitted.) *State v. Sandomingo*, 39 Wn. App. 709, 713-14, 695 P.2d 592 (1985).

■ ■ The court's ruling on the admission of testimony under ER 702 and 703 is reviewed for an abuse of discretion. Discretion is abused when it is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[21] Lacking an adequate foundation, it was an abuse of discretion to admit Dr. Vath's testimony.

We reverse the summary judgments and remand for further proceedings consistent with this opinion.

COLEMAN and AGID, JJ., concur.

Review denied at 118 Wn.2d 1010 (1992).

---

[21]*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 482 P.2d 775 (1971).