[No. 28104-0-II. Division Two. July 1, 2003.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Respondent*, v. MICHAEL T. TRECIAK, ET AL., *Defendants*, ROBIN L. TAVENNER, *Appellant*.

---

[33] *Cortez*, 337 F.2d at 701-02; *Kent v. United States*, 272 F.2d 795 (1st Cir. 1959).

*Preston L. Foskey*, for appellant.

*Marilee C. Erickson* and *Gailann Y. Stargardter* (of *Reed McClure*), for respondent.

HOUGHTON, J. — State Farm Mutual Automobile Insurance Company sought a declaratory judgment stating that it had no duty to defend or indemnify Michael T. Treciak, an alleged at-fault driver in a personal injury lawsuit brought by Robin L. Tavenner. Treciak submitted a declaration that the trial court struck after finding that it contradicted his prior deposition testimony. The trial court then granted State Farm's motion for summary judgment on coverage. Tavenner, to whom Treciak assigned his interest in a lawsuit against State Farm, now appeals, arguing that the trial court erred in striking Treciak's affidavit and in granting summary judgment. Because all of the evidence, including Treciak's declaration, establishes a question for the fact finder, we agree that the trial court erred. The matter is reversed and remanded for further proceedings.

## FACTS

On November 21, 1997, Treciak, while driving a 1996 Dodge Ram pickup truck, struck a car driven by Tavenner. Tavenner sued Treciak and Sherry Ormand, then husband and wife, who, according to title documents, were the Ram's co-owners. In pursuing her lawsuit, Tavenner deposed both Ormand and Treciak.

In her deposition, Ormand stated that she married Treciak in September 1996. They separated in January 1997. Ormand owned the Ram and had it insured through State Farm. She testified that Treciak did not use the Ram nor was he listed as a driver on her State Farm insurance policy. She testified that Treciak did not have permission to use the Ram but that he did have a set of keys for it.

Treciak testified that he and Ormand were able to purchase the Ram together based on his income. When asked if he was the owner of the vehicle, Treciak replied that both of their names were on the title and he considered himself a technical owner. Treciak also believed that the State Farm policy covered him because he considered himself the Ram's co-owner. He stated that his name was on the title, so he assumed that he had to be insured.

Treciak also testified that, during his marriage, he did not regularly drive the Ram, but he used it occasionally to run short errands and purchase supplies for the property he and Ormand shared. He also testified that when he and Ormand separated a few months before the accident, he left the property but he returned on occasion because his personal belongings remained there. He gave varying testimony about whether he had permission to drive the Ram, stating that he did not recall whether he had permission or that if he did not have permission, when that permission was withdrawn.

After Treciak's and Ormand's depositions, State Farm filed a separate declaratory action to determine coverage. State Farm moved for summary judgment in that action, arguing that it did not insure Treciak because: (1) he was not named

in the policy; (2) he did not reside with the named insured; (3) he was not a relative who lived with the named insured; and (4) he did not have the named insured's permission to use the Ram.[1]

---

[1] The State Farm policy provided, in pertinent part:

[Coverage]

**SECTION I—LIABILITY—COVERAGE A**

. . . .

We will:

1.  pay damages which an *insured* becomes legally liable to pay because of:

    a. *bodily injury* to others, and

    b. damage or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car*; and

2.  defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

Clerk's Papers (CP) at 63.

[Definitions]

*First Person Named*—means the first *person* named on the declarations page. It includes a *person* regularly residing in the household of the *first person named* with whom the *first person named* has a personal relationship arising out of a civil contract.

*Insured*—means the *person, persons* or organization defined as *insureds* in the specific coverage. . . .

. . . .

*You* or *Your*—means the *person(s)* or organization shown on the declarations page as named insured(s). It includes a *person* regularly residing in the named insured's household with whom the named insured has a personal relationship arising out of a civil contract.

CP at 61, 62.

[Liability coverage]

**Who Is an Insured**

When we refer to *your car*, a *newly acquired car* or *a temporary substitute car, insured* means:

1. *you*;

2. the *relatives* of the *first person named*;

3. any other *person* while using such a *car* if its use is within the scope of *your* consent; and

4. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

CP at 64.

In response, Tavenner[2] filed Treciak's postdeposition declaration in which he stated that Ormand contacted him, told him that he was not insured under the truck policy, and encouraged him to provide inaccurate testimony about their relationship and the truck. Treciak further declared that he traded in his 1987 Toyota pickup truck and Ormand traded in her 1992 Honda Accord to buy the Ram. And he declared that Ormand made payments on the Ram from their joint checking account.

Finally, Treciak declared that, from its purchase to the November 21 collision, he was the Ram's primary driver. He drove it every day and usually he dropped off and picked up Ormand from work. He also declared that he did not move from the property they shared and continued to reside there until "some time after the collision." Clerk's Papers (CP) at 186. He further stated that, "I was never, at any time, told by SHERRY [Ormand], not to use the truck, as I was and had been the primary user of the vehicle a fact that we both understood." CP at 186.

On State Farm's motion, the trial court struck Treciak's declaration, stating: "You cannot create an issue of fact by testifying—or giving either two different declarations or depositions and a differing declaration in an attempt to create an issue of fact." Verbatim Report of Proceedings at 5-6. The trial court then granted State Farm's motion for summary judgment and Tavenner appeals.

## ANALYSIS

Tavenner contends that the trial court erred in striking Treciak's declaration and in granting summary judgment. She asserts that Treciak's explanation for his contradictory statements go to his testimony's weight and credibility, an issue for the fact finder. She also asserts that Treciak was

---

[2] Treciak assigned all rights that he might have against State Farm arising out of its failure to indemnify him against the lawsuit by Tavenner to her. Later, the court entered a default order against Treciak in the underlying case.

not an adverse party to the present claim and that the *Marshall*[3] rule on conflicting testimony should not apply.

On review of summary judgment, we engage in the same analysis as the trial court. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92, 993 P.2d 259 (2000). We can uphold the trial court's summary judgment grant only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We must view the facts and the reasonable inferences from them in the light most favorable to the nonmoving party. *Trimble*, 140 Wn.2d at 93.

In *Marshall*, the plaintiff gave an unequivocal answer about when he first learned that he had asbestosis. *Marshall*, 56 Wn. App. at 183. The answer placed his claim beyond the statute of limitations. The plaintiff then submitted an affidavit contradicting not only his deposition testimony, but also other evidence, including medical records.

The *Marshall* court noted that it could not reasonably infer a genuine issue of material fact from the evidence. In doing so, the court determined that summary judgment dismissing Marshall's claim on statute of limitations grounds was appropriate, reasoning: " 'When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.' " *Marshall*, 56 Wn. App. at 185 (quoting *Van T. Junkins & Assocs. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

Here, apparently relying on *Marshall* and its progeny, the trial court struck Treciak's declaration because it contradicted his deposition testimony. In doing so, the trial court misapplied *Marshall* and erred in striking the declaration.

We previously explained *Marshall*'s evidential impact in *Schonauer v. DCR Entertainment, Inc.*, 79 Wn. App.

---

[3] *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989).

808, 905 P.2d 392 (1995), *review denied*, 129 Wn.2d 1014 (1996). In *DCR*, we noted that *Marshall* does not stand for the proposition "that statements in a party's affidavit are inadmissible (i.e., may not be considered by the court) if the affidavit is inconsistent with an earlier deposition and fails to explain the inconsistency." *DCR*, 79 Wn. App. at 817. Instead, we determined that the *Marshall* court was considering sufficiency, not admissibility, of the testimony, that is

> [t]he *Marshall* court considered the plaintiff's affidavit in light of the other evidence in the case before concluding (1) that the affidavit was inconsistent with plaintiff's earlier deposition testimony, (2) was offered without explaining the inconsistency, and thus (3) was insufficient to raise a reasonable inference supporting plaintiff's position.

*DCR*, 79 Wn. App. at 818 (citation omitted). The *DCR* court set forth the basic evidential premise that on summary judgment, a later declaration should be considered in light of other evidence presented in the case to determine whether sufficient evidence raises a factual issue.

In striking Treciak's declaration, the trial court ruled that it was inadmissible. This is contrary to *DCR* and the trial court erred in doing so. But applying the *Marshall* rule, our inquiry does not end there.

After striking Treciak's affidavit, the trial court determined that no questions of fact remained. It then granted summary judgment on State Farm's noncoverage claim.

As already noted in *DCR*, on review we must determine whether Treciak's declaration contradicted earlier testimony, whether he explained the inconsistency, and overall whether sufficient evidence raises a material issue of fact. At argument below, Tavenner agreed that the declaration contradicted Treciak's deposition testimony. Thus, we must decide whether Treciak's explanation and other evidence sufficiently raise a reasonable inference supporting Tavenner's position.

In his declaration, Treciak stated,

I was contacted by Defendant, SHERRY ORMAND, to whom I was married at the time of that deposition, who advised me that I was not covered by insurance for the November 21, 1997 collision, and encouraged me to provide the testimony that I gave at that deposition. That testimony was inaccurate. The following is the correct and true factual situation concerning my residence, contact with my wife and use of the vehicle at the time of the November 21, 1997 collision.

CP at 184-85.

This case is similar to *Safeco Insurance Co. v. McGrath*, 63 Wn. App. 170, 817 P.2d 861 (1991), *review denied,* 118 Wn.2d 1010 (1992). In *Safeco,* the defendant shot a person. The defendant's insurance policy did not cover intentional criminal acts. Under oath, the defendant first claimed no intent to shoot the victim, but rather only to aim at the victim's shoulder. *Safeco,* 63 Wn. App. at 174 n.11. In a later statement under oath, he said he did not intend or expect to hit the victim. *Safeco,* 63 Wn. App. at 174. When asked whether he intended to hit the victim's shoulder, the defendant replied that he had not intended to but he assumed that he hit the victim's shoulder because of the victim's reaction. *Safeco,* 63 Wn. App. at 175 & n.13.

On appeal, the court determined that the *Marshall* rule did not apply because (1) the later statements were not "flat contradiction(s)" of the first and (2) the defendant offered an explanation for the inconsistencies. *Safeco,* 63 Wn. App. at 175. Finally, the court held that the jury decides whether the explanation was plausible. *Safeco,* 63 Wn. App. at 175.

Here, although Treciak's declaration differs from his earlier testimony, he provides an explanation for the contradiction. The jury should determine his statements' plausibility. *Safeco,* 63 Wn. App. at 175. Nevertheless, we do not hold that whenever a witness testifies that he lied in earlier testimony, his explanation creates a jury question. Rather, when equivocal statements are further explained in later testimony, we review those statements along with all the evidence presented to see if there is an issue of fact for the jury.

During his deposition, Treciak was asked if Ormand ever told him not to use the truck before the accident. He replied, "I don't recall, but I want to say yes, but I don't actually recall." CP at 140. When pressed further to remember what she said, Treciak replied, "As far as prior to the accident, or after the accident, I don't really recall that." CP at 140. Then, Treciak was asked, "So before this accident, you don't recall her ever telling you not to use the truck; is that true?" CP at 140. He replied, "I want to say yes, but, basically, what you're getting at is, did I have permission, no; I didn't have permission." CP at 140. Later he was again asked whether Ormand told him not to drive the truck. CP at 145. He answered, "Like I said, I don't recall if it was prior to it or after the accident." CP at 145. And he continued, "sometime along the line, I was told not to drive the truck." CP at 145.

Treciak's answers are equivocal as to whether he had permission to drive the truck at the time of accident. It remains unclear whether, if ever, he lost his privilege to drive the Ram.

Moreover, in his declaration Treciak states, "From the time we purchased the truck until after the collision of November 21, 1997 I was the primary driver of the vehicle. I drove it [to] work almost every day and would usually drop [Ormand] off at work and pick her up on the way home." CP at 186. He also declares, "I continued to use the truck and was the primary driver. . . . I was never, at any time, told by [Ormand], not to use the truck, as I was and had been the primary user of the vehicle a fact that we both understood." CP at 186. These statements further explain Treciak's previous statements regarding whether he had permission to use the truck.

And no one disputes that Treciak had his own set of keys to the Ram from its purchase date. Treciak also believed that he was covered by the State Farm policy because he was a co-owner of the truck. Several times during his deposition testimony, Treciak indicates that he drove the truck to run errands with Ormand's knowledge.

This evidence, taken in the light most favorable to Tavenner, raises an issue of material fact. The trial court erred in granting State Farm's motion for summary judgment.

Tavenner also argues that the *Marshall* rule does not apply because Treciak is not an adverse party. Although there may be policy reasons, not raised, for distinguishing between a party and a nonparty, we find none here. State Farm named Treciak as a defendant in its complaint for declaratory relief, making him a party of interest. And although Treciak assigned his rights to Tavenner, Treciak retained some interest in whether he had insurance coverage.

Reversed and remanded for further proceedings.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review denied at 151 Wn.2d 1006 (2004).