# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75717-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CLIFFORD WAYNE SNYDER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 26, 2018 |
| | ) | |

SPEARMAN, J. — Clifford Snyder appeals his jury conviction for attempted second degree rape, contending that his attorney was ineffective for failing to raise a voluntary intoxication defense. Snyder also asserts that he was deprived of a fair trial due to the prosecutor's misconduct and challenges the trial court's authority to impose several conditions of community custody. We accept the State's concession that one of the conditions of community custody imposed by the trial court is unconstitutionally vague, and we remand for the trial court to strike or clarify the condition. In all other respects, we affirm.

## FACTS

Clifford Snyder and C.H. were neighbors in Gold Bar for approximately ten years. They would frequently visit with each other and drink alcohol and smoke pot. According to C.H., Snyder on "several occasions" told her "that he really liked me and would like to go out." Verbatim Report of Proceedings (VRP)

(7/19/16) at 97. C.H. would always tell Snyder no, because she had a boyfriend. C.H. also told Snyder that she would not date him because he was younger than she was. Snyder said "it didn't make any difference" and "[h]e liked older women." Id. at 98.

On June 20, 2015, Snyder invited C.H. to "[s]top by and have a drink and relax." Id. at 100. At around 7:00 p.m., C.H. brought over the remainder of a bottle of wine. Snyder had just finished drinking a beer. C.H. and Snyder finished the wine. At around 9:00 p.m., they decided to go to a nearby store where C.H. bought a larger bottle of wine and Snyder bought a case of beer.

Snyder suggested they visit mutual friends in nearby Index, approximately 10 miles away. Snyder drove the two in his pickup truck on Highway 2. While there, C.H. stated that she had "a couple sips" of the wine and "had a little buzz but I wasn't drunk." Id. at 104-05.

At around 10:00 p.m., C.H. told Snyder she was tired and wanted to go home. C.H. testified that Snyder was too intoxicated to drive, but that she was unable to drive Snyder's truck because it had a manual transmission. C.H. asked Snyder to return to Gold Bar using Highway 2, but Snyder insisted on using Reiter Road, a road that C.H. described as "dark" and "scary." Id. at 105. C.H. stated that it was common practice in the area for people to use Reiter Road instead of Highway 2 when they had been drinking and wanted to avoid detection, because there were no lights or houses on the road.

C.H. and Snyder argued about Snyder's driving. Snyder suddenly slammed on the brakes and told C.H. he needed to relieve himself. Snyder exited

the truck for a few minutes and C.H. heard him brushing along the side of the truck. Snyder then opened the driver's side door and told C.H. "I want to lick your pussy whether you want it or not." Id. at 109. Snyder grabbed C.H.'s arm and yanked her out of the truck with enough force that C.H. fell on the ground. C.H. tried to get up but Snyder pinned both of her arms behind her with one hand. Snyder pressed himself against C.H.'s back and began "fidgeting with his belt" with the other. Id. at 111-12.

C.H. was able to escape Snyder's grip and ran to the truck. She grabbed the wine bottle and broke it on the ground to use as a weapon. C.H. began running down the street. Snyder hit C.H. with the bumper of the truck and she fell forward. Snyder then backed up and hit C.H. again with the side mirror. Snyder yelled "I'll take you home." Id. at 116. C.H. was afraid she would not be able to find her way home and got in the truck, still holding the broken wine bottle.

Snyder drove towards Gold Bar but did not turn onto the road leading back to C.H.'s house. Instead, Snyder turned into a deserted gravel pit. C.H. texted her boyfriend "Help Reiter Pit Road." Id. at 132. Snyder took C.H.'s phone and demanded to know who she was texting. C.H. jumped out of the truck and began walking towards her house.

Washington State Patrol Trooper James Parzych encountered C.H. walking along the road at approximately 11:40 p.m. C.H. appeared frightened and upset and told Parzych that Snyder had attacked her. Trooper Parzych testified that C.H. appeared intoxicated and was still holding the broken wine bottle.

The following day, June 21, 2015, Snyder came to C.H.'s house and returned her phone. C.H. refused to speak to him. Snyder texted C.H., asking "Can you tell me what happened? I'm so sorry." Id. at 127. C.H. told Snyder that he had attempted to rape her and hit her with his truck. Snyder texted "Whoa. Very sorry. WTF. I'm very sorry to you. I don't know what to say. I was in and out. It's hard to know. I hope you are O.K. I never meant anything to happen." Id. at 130.

On June 24, 2015, Deputy Jon Barnett of the Snohomish County Sheriff's Office went to Snyder's house and took the following statement from Snyder:

> I came home from work on Saturday and had a few beers with friend up the street. [C.H.] came by and parked in my yard as she did not want to see her boyfriend across the street. She wanted to drink instead and brought a couple bottles of wine out. We drank some wine, there was some pot. At some point we went to get more wine and beer in my pickup. She wanted to go to Index to see Louie and Brian so we went. My memory of getting there or how long we stayed is very blurry. Everything seemed fine. We came home on Reiter Road, I was having a very hard time driving so I pulled over to sleep. I thought she was sleeping also. We had an argument, but I cannot remember why. I think she was angry I was not driving home. She started walking down the road into the dark as I stopped to try to talk her back in the truck to drive home. She got mad and said the mirror hit her. I remember the wine bottle she was holding hitting the ground. I drove home and did not get in the turn lane we were still arguing. I stopped to turn around and she got out, she wanted to walk. I drove to my friend's house. Next morning I was bleeding a little and had her phone. I took her phone to her and she did not want to talk. Later I texted to ask her what happened and she said I went crazy. I apologized and do not remember the things she said I did. I never meant to argue or harm her. We have been friends and neighbors for about 4 years. Her boyfriend and I have been friends. I have stayed at her house several times.

Exhibit (Ex.) 1. Snyder denied intentionally hitting C.H. with his truck, stating "I stopped to pick her up and did not mean for the mirror to hit her." Ex. 1. When

Deputy Barnett asked Snyder if he (1) told C.H. he wanted to lick her pussy, (2) held C.H.'s arms behind her back, (3) took C.H.'s phone or (4) pulled C.H. out of the truck, Snyder said that he did not remember.

The State charged Snyder by amended information with attempted second degree rape. C.H., Trooper Parzych and Deputy Barnett testified at trial. Snyder did not testify. A jury convicted Snyder as charged. Snyder appeals.

## ANALYSIS

### Voluntary Intoxication Instruction

Snyder first contends that he was denied effective assistance of counsel because his attorney did not propose a voluntary intoxication instruction.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate both that counsel's conduct was deficient and that the deficient performance resulted in prejudice. State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). To show that counsel's performance was deficient, the defendant must establish that it fell below an objective standard of reasonableness given the circumstances. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If counsel's conduct can be characterized as a legitimate trial strategy or tactic, performance is not deficient. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To show that the deficient performance was prejudicial, the defendant must show that there is a reasonable probability that but for counsel's errors, the result of the proceeding

would have been different. McFarland, 127 Wn.2d at 334-35. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Strickland, 466 U.S. at 700. We engage in a strong presumption that counsel's representation was effective. McFarland, 127 Wn.2d at 335.

A defendant is entitled to a voluntary intoxication instruction only if "the evidence ... reasonably and logically connect[s] the defendant's intoxication with the asserted inability to form the required level of culpability to commit the crime charged." State v. Gabryschak, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996). The defendant must show "(1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected [the defendant's] ability to acquire the required mental state." State v. Everybodytalksabout, 145 Wn.2d 456, 479, 39 P.3d 294 (2002) (Footnote omitted).

Here, the first two requirements are satisfied. A person is guilty of an attempt to commit a crime "if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). And there was evidence from which a jury could conclude that Snyder was intoxicated. C.H. testified that Snyder had both beer and wine that evening, that he did not appear sober, and that he was not driving safely. Snyder told C.H. he did not remember the evening because he was "in and out" and told Deputy Barnett that his memory of the evening was "blurry."

However, "[e]vidence of drinking or drug use alone is insufficient to warrant the instruction; there must be 'substantial evidence of the effects of the substance use on the defendant's mind or body.'" Gabryschak, 83 Wn. App. at 253 (quoting Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 179, 817 P.2d 861 (1991)). Snyder fails to show that there was substantial evidence that he was so intoxicated he could not form the intent to commit the crime. Instead, evidence in the record showed that Snyder acted in a calculated and deliberate manner. For example, C.H. testified that Snyder deliberately chose Reiter Road instead of Highway 2 "because he was concerned about getting a DUI." VRP (7/19/16) at 143. Snyder was also aware that C.H. was using her phone to get help, demanded to know who she was texting, and took her phone away to prevent further contact. Given the lack of evidence connecting Snyder's intoxication to an inability to form the requisite level of intent, Snyder cannot show that a voluntary intoxication instruction would have been given even if his attorney had requested one at trial.

Even assuming Snyder was entitled to a voluntary intoxication instruction, Snyder does not meet his burden to show there was no conceivable reason for not requesting one. Snyder's defense at trial was that the attempted rape never happened. Snyder attacked C.H.'s credibility, noting that C.H. did not initially report a sexual assault to law enforcement or the hospital. Snyder's attorney also noted that the timeframe supported Snyder's version of events – that Snyder and C.H. went to sleep in the truck – rather than C.H.'s version. In closing argument, Snyder's attorney argued:

> [T]he only thing that happened that night was an assault took place, a physical assault, not any attempt to have a sexual assault.
>
> The only thing that happens that night was there was an argument between two intoxicated individuals over who was going to drive home, and [C.H.] got hit with the truck.

Id. at 206. It was reasonable for Snyder's attorney to believe that this defense would have been undermined if Snyder had argued that he was so intoxicated that he did not know what was happening.[1] Because the decision not to request an involuntary intoxication jury instruction was a tactical one, we conclude that Snyder was not deprived of effective assistance of counsel.

## Prosecutorial Misconduct

Snyder argues that he was denied his right to a fair trial when the prosecutor committed misconduct by expressing a personal opinion on Snyder's guilt.

---

[1] Citing State v. Fernandez-Medina, 141 Wn.2d 448, 6 P.3d 1150 (2000), Snyder asserts that he is entitled to an instruction on all defenses that are supported by the evidence, even if the defenses are inconsistent. In Fernandez-Medina, the trial court refused to instruct the jury on a lesser included offense, concluding that it was inconsistent with the defendant's alibi defense. The Washington Supreme Court held that the trial court erred because a defendant is permitted to present inconsistent defenses. But the Court did not address whether it would have been ineffective for defense counsel to make a tactical decision not to propose an instruction inconsistent with the defense.

Snyder also analogizes this case to State v. Thomas, 109 Wn.2d 222, 743 P.2d 816 (1987) and State v. Kruger, 116 Wn. App. 685, 67 P.3d 1147 (2003), which held that it was ineffective for defense counsel to fail to request a voluntary intoxication instruction when it was supported by the evidence. But Thomas and Kruger did not involve inconsistent defenses; the defendants admitted to the offenses but argued that they were too intoxicated to have formed the requisite intent. See, e.g., Kruger, 116 Wn. App. at 690 ("Kruger did not deny that the event occurred; just that if it did, it was not intentional.") Here, as discussed above, Snyder denied that he sexually assaulted C.H. Because a voluntary intoxication defense was potentially inconsistent with Snyder's denial, it was a tactical choice whether to request an instruction on that issue.

During rebuttal closing argument, the prosecutor explained to the jury what constituted a "substantial step" in order to convict Snyder of attempted second degree rape:

> And if it wasn't happening like she described, why would she be texting her boyfriend to come help her in the middle of nowhere? When he yanks her out of that car and opened the door and told her what he was going to [sic] do to her and what he wanted to do to her, that was a substantial step, <u>and that's why I charged him</u>.

VRP (7/19/16) at 219-220 (emphasis added). Snyder's attorney did not contemporaneously object. However, the following morning, Snyder's attorney moved for a mistrial.

> There was something that I immediately thought about after the jury had gone out as to what – something that [the prosecutor] said during his rebuttal argument about a substantial step and that's why I charged him.
> I think that that is improper. It is considered vouching. An objection was not made at the time, but I feel that to preserve the issue, the best thing for me to do at this point would be to make the motion for a mistrial, pursuant to case law, to preserve the issue for any future proceedings.

VRP (7/20/16) at 225. The trial court denied the motion.[2]

> Well, I'm disinclined to give some limiting instruction. Of course, none has been offered. But, also, there was no objection made at the time of the comments during rebuttal argument. And that seems to me to be one of the burdens that lawyers have is to make a timely, seasonal objection if they feel that there is some comment that's inappropriate. The instructions already indicate to the jury that they're not to consider the filing of the Information or its contents as proof of the matters.
>
> I don't know that I would characterize the comment as vouching for anyone's credibility. I would agree that it probably is

---

[2] Snyder does not argue the trial court abused its discretion in denying his motion for a mistrial.

inappropriate. But I don't think it's sufficient today, when the issue is raised, to go back and revisit a comment to which no objection was taken seasonably at the time or to give a limiting instruction.

I think the instructions are adequate, and the jury will focus on the evidence and make a decision as they choose.

Id. at 226.

Prosecutorial misconduct may deprive a defendant of the right to a fair trial. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). To prevail on a claim of prosecutorial misconduct, a defendant must show the prosecutor's conduct was both improper and prejudicial. State v. Ish, 170 Wn.2d 189, 195, 241 P.3d 389 (2010). Misconduct is prejudicial where there is a substantial likelihood the improper conduct affected the jury's verdict. State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007). We review alleged prosecutorial misconduct "'in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011 (quoting State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

It is improper for a prosecuting attorney to apply the "weight and influence of the personal character of counsel for the state" in order to "[call] upon the jury to support his judgment." State v. Susan, 152 Wash. 365, 380, 278 P. 149 (1929). The State concedes that the prosecutor's statement "that's why I charged him" was improper for this reason. We accept the State's concession as well taken.

Nonetheless, even though the prosecutor's statement was improper, Snyder cannot establish prejudice. The trial court instructed the jury that they

-10-

were the sole judges of credibility and that the attorneys' arguments did not constitute evidence. We presume that jurors follow the instructions they are given. State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Moreover, the prosecutor's reference to the charging decision was not significant in the context of the total argument. The prosecutor was explaining how Snyder's conduct amounted to a "substantial step" towards the crime of second degree rape. Snyder did not dispute that the challenged conduct was a substantial step, but instead argued that the conduct never happened. We conclude that reversal is not required because there is not a substantial likelihood that the statement affected the verdict.[3]

## Conditions of Community Custody

Snyder contends that the trial court erred by imposing conditions of community custody that were not related to the offense. He challenges the following four conditions:

7. Do not associate with known users or sellers of illegal drugs.

8. Do not possess drug paraphernalia.

9. Stay out of drug areas, as defined in writing by the supervising Community Corrections Officer.

...

13. Participate in substance abuse treatment as directed by the supervising Community Corrections Officer.

---

[3] In the alternative, Snyder argues his attorney was ineffective for failing to object to the improper statement. Because we conclude that Snyder does not demonstrate prejudice, his ineffective assistance claim necessarily fails.

Clerk's Papers (CP) at 34. Snyder contends that, while the evidence of his alcohol use was overwhelming, there was no evidence that he used drugs the night of the crime.

A trial court may impose, as conditions of community custody, a "crime-related prohibition," defined as an order prohibiting conduct that relates to the circumstances of the crime. RCW 9.94A.703(3)(f); RCW 9.94A.030(10). Although the trial court's prohibition on "conduct ... during community custody must be directly related to the crime, it need not be causally related to the crime." State v. Letourneau, 100 Wn. App. 424, 432, 997 P.2d 436 (2000). We review whether a community custody prohibition is crime-related for abuse of discretion. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Snyder told Deputy Barnett that, on the night of the crime, "We drank some wine, there was some pot." Ex. 1. Snyder argues that this statement is insufficient to demonstrate that he used marijuana; he contends it merely establishes that marijuana was present. But C.H. testified that she and Snyder had regularly smoked marijuana together in the past. 7/19/16RP 104. It was reasonable for the trial court to conclude from Snyder's statement that Snyder had smoked marijuana on the night of the crime. Accordingly, the trial court did not abuse its discretion in imposing the drug related conditions.

Snyder also challenges a community custody condition requiring him to "[e]nter and successfully complete identified interventions to assist you to improve your skills, relationships, and ability to stay crime free." CP at 18. Snyder contends that this condition is unconstitutionally vague. A condition is

-12-

unconstitutionally vague if it fails to (1) provide ordinary people fair warning of proscribed conduct, or (2) have standards that are definite enough to protect against arbitrary enforcement. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). The State concedes that this condition is unconstitutionally vague. We accept the State's concession of error and remand for the trial court to strike or clarify the condition.

Snyder asks this court to deny an award of appellate costs based on his indigency. Where, as here, a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. If the State has evidence of significant improvement in Snyder's financial circumstances since the trial court's finding, it may file a motion for costs with the commissioner.

Affirmed and remanded.

Spearman, J.

WE CONCUR:

Leach, J.

Appelwick, J.