[No. 49587–4.   En Banc.   June 28, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. MARK ALLEN RICE, ET AL, *Petitioners.*

*Hemovich & Nappi,* by *Michael J. Hemovich* and *Phelps R. Gose,* for petitioner Rice.

*Raymond H. Thoenig* and *Paris K. Kallas* of *Washington Appellate Defender Association,* for petitioner Luna.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Deputy,* for respondent.

DORE, J.—Defendants Mark Allen Rice and Richard Luna were convicted of second degree felony murder. They claim prejudicial error to the trial court's failure to instruct on intoxication, and on a statutory affirmative defense. We reverse and remand for new trials.

## FACTS

During the evening of February 18, 1981, Richard Hutchinson and Theodore Urban were playing ping–pong in a north Seattle tavern. Around 11:15 p.m., defendants, together with Robert Merritt, entered the tavern accompanied by two women.[1] A fight broke out between Luna and Urban. Rice, wielding a pocketknife, came to Luna's aid and threatened Urban.

Urban escaped from the tavern and ran to an outside parking lot, but was overtaken by defendants and Merritt. Hutchinson joined the brawl outside the tavern in an attempt to aid Urban. Hutchinson and Urban worked themselves free and fled on foot.

At trial, Urban testified:

Q: Were you still running together?
A: Not actually, he [Hutchinson] was a little—A few feet in front of me, I have a pin in my ankle, I have to make sure of steps, there is times I can walk normally,

---

[1] Robert Dale Merritt pleaded guilty to murder in the second degree prior to trial and is not a party to this appeal.

and the foot will give out and I will fall down, so my main concern was—unsure footing. I figured the condition they were in, I could outlast them.

Q: You say condition they were in, to what are you referring?

A: Well, from the way they—spilled beer, and couldn't hit the ping pong ball, I was under the presumption they were—drunk, or—not of normal mind.

Report of Proceedings, at 49–50.

Hutchinson and Urban went in different directions to elude their attackers. Merritt, Rice and Luna shortly caught up with Hutchinson in the driveway of a parking lot. They forced Hutchinson to the ground and beat and stabbed him repeatedly until driven off by an approaching automobile. Hutchinson died later that night from his injuries.

### INTOXICATION INSTRUCTION

The primary issue raised is whether the trial court committed prejudicial error in refusing to give an intoxication instruction. Defendant Luna had submitted the following instruction derived from WPIC 18.10.

No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular kind or degree of crime, the fact of intoxication may be taken into consideration in determining such mental state.

Report of Proceedings, at 606.[2]

At trial, Urban, the State's primary witness, testified he thought he could elude the defendants because he "was under the presumption they were drunk" from the way they spilled their beer and their ineptness at hitting the ping–pong ball. Rice and Luna testified they had been drinking beer all day and had ingested between two and five Quaaludes each on the day these events occurred. Luna

---

[2]Defendant Rice proposed a similar intoxication instruction derived from RCW 9A.16.090. Report of Proceedings, at 589.

was struck by a car earlier that evening but "he was so loaded he didn't feel it." The arresting officers had concluded that both defendants were intoxicated and administered Breathalyzer tests. Luna and Rice registered .06 and .10 on the Breathalyzer. We hold this evidence in its totality was sufficient to instruct the jury on the intoxication defense. *State v. Brooks,* 97 Wn.2d 873, 651 P.2d 217 (1982); *State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981).

The trial court's instructions informed the jury of the elements of second degree felony murder, including knowledge as the requisite mental state. The jury was not instructed that intoxication could be considered in determining whether the defendants acted with the mental state essential to commit the crime of felony murder. Consequently, the jury, without the requested instruction, was not correctly apprised of the law, and defendants' attorneys were unable to effectively argue their theory of an intoxication defense. *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977).

Erroneous instructions given on behalf of the party in whose favor the verdict was returned are presumed prejudicial unless it affirmatively appears they were harmless. *State v. Golladay,* 78 Wn.2d 121, 470 P.2d 191 (1970). An error in instructions is harmless only if it has no effect on the final outcome of the case. *State v. Rotunno,* 95 Wn.2d 931, 631 P.2d 951 (1981); *State v. Caldwell,* 94 Wn.2d 614, 618 P.2d 508 (1980). If the jury had been instructed on the defendants' mental state, it could well have returned a different verdict. We conclude that the failure to give defendants' intoxication instruction was reversible error. *State v. Conklin,* 79 Wn.2d 805, 489 P.2d 1130 (1971).

### AFFIRMATIVE DEFENSE INSTRUCTION

The trial court gave instruction 15A on the affirmative defense to felony murder outlined in RCW 9A.32.050(1)(b):

It is a defense to a charge of murder in the second degree based upon committing or attempting to commit the crime of assault in the second degree that the

defendant:
(1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof; and
(2) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury; and
(3) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article or substance; and
(4) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.
*The defense must be established by a preponderance of the evidence.* Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true.[3]

(Italics ours.) Report of Proceedings, at 581. The court's instruction 12 provided:

A person is an accomplice in the commission of a crime, if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:
(1) solicits, commands, encourages or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing the crime.
The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime.

Report of Proceedings, at 577.

■ Defendants contend that, where one is charged as an accomplice with felony murder predicated on second degree assault, the affirmative defense instruction violates due process by shifting the burden of proof to the defendant on

---

[3]Both defendants requested this instruction and now challenge its constitutionality on appeal. Ordinarily a party may not request an instruction and later challenge the instruction on appeal, even where the claimed error is constitutional in dimension. *State v. Sherman,* 98 Wn.2d 53, 653 P.2d 612 (1982). However, for the benefit of the trial court on remand, we will analyze the issue presented in this assignment of error. *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977).

an essential element of the crime. *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983). This argument presents an issue of some complexity. After carefully reviewing the felony murder doctrine, however, and the legislative intent and purpose of the statutory affirmative defense, we decline to adopt defendant's rationale. The subject statutory affirmative defense is helpful to the defendant for it provides him with an additional means to establish his innocence. We believe the principles outlined in *McCullum* were not meant to negate the availability of this statutory defense in felony murder cases. *See generally Criminal Law—Affirmative Defenses in the Washington Criminal Code—The Impact of Mullaney v. Wilbur, 421 U.S. 684 (1975),* 51 Wash. L. Rev. 953, 976–78 (1976).

Further, the record reflects that both Rice and Luna were charged with felony murder as principals, not accomplices. Under RCW 9A.32.050(1)(b), a person is guilty of second degree felony murder if, while engaged in a specified felony, he *or another participant* in the felony causes the death of another person. The felony murder statute expressly establishes the nonkiller participant's complicity in the homicide as a principal. Therefore, as these defendants were charged as principals, any accomplice liability instruction was not relevant to the crime charged.

Even assuming an accomplice liability instruction was appropriate in this case, defendant's argument must fail. This court recently held in *State v. Davis,* 101 Wn.2d 654, 682 P.2d 883 (1984), that where criminal liability is predicated on the accomplice liability statute, the State is required to prove only the accomplice's general knowledge of his coparticipant's substantive crime. Specific knowledge of the elements of the coparticipant's crime need not be proved to convict one as an accomplice. Consequently, even assuming Rice and Luna were charged as accomplices to felony murder, the State would only have been required to prove their knowledge of their coparticipant's criminal assault on the victim. It would have been unnecessary for the State to prove the defendants' actual knowledge of

their coparticipant's possession of a deadly weapon or his mental intent. *State v. Davis, supra.*

An affirmative defense which requires an accomplice to prove he had no knowledge of the principal defendant's mental state does not negate an essential element of the crime charged. *Patterson v. New York,* 432 U.S. 197, 215, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977). Accordingly, the instruction setting forth the statutory affirmative defense to felony murder meets constitutional standards set forth in *State v. McCullum, supra.*

#### DEADLY WEAPON INSTRUCTION

Defendants' final contention is that the trial court erred in giving instruction 17:

> For purposes of the special verdict, the law provides that if one person is armed with a deadly weapon, all accomplices are deemed to be so armed, even if only one deadly weapon is used in the commission of the crime.[4]

Report of Proceedings, at 583.

■ We recently disapproved this instruction in *State v. McKim,* 98 Wn.2d 111, 118–19, 653 P.2d 1040 (1982), saying:

> the jury was instructed that for purposes of the deadly weapon allegation, "if one of the two participants is armed with a . . . deadly weapon, then both are considered to be so armed." Clerk's Papers, at 16. The above instruction amounts to a conclusive presumption that petitioner knew his codefendant was armed at the time of the offense. Clearly, this does not comport with our present holding that such knowledge must be established by the State beyond a reasonable doubt. Since the jury was not properly instructed on the elements and standard of proof regarding the deadly weapon allegation, we must strike the special verdict as to the deadly weapon penalty enhancement.

The trial court erred in instructing the jury that for pur-

---

[4]This issue was not presented to the court until defendant Luna filed a statement of additional authorities 2 days prior to the oral argument. Although the issue was untimely raised, as these cases will be retried we hold that instruction 17 is not a correct statement of the law on accomplices.

poses of the special verdict, a defendant is deemed armed if any participant in the crime is armed.

CONCLUSION

We set aside the convictions of defendants Rice and Luna and remand to the trial court for retrial in accordance with the provisions of this opinion.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, and PEARSON, JJ., concur.

DOLLIVER and DIMMICK, JJ., concur in the result.