[No. 28991-5-III.   Division Three.   May 24, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES LEE WALTERS, *Appellant*.

*Andrea Burkhart* (of *Burkhart & Burkhart PLLC*), for appellant.

*Randy J. Flyckt, Prosecuting Attorney,* and *Carolyn C. Jones, Deputy,* for respondent.

¶1 Korsmo, J. — After a night of heavy drinking, James Walters stole some keys and later fought with a police officer. The trial court declined to give an intoxication instruction requested by the defense. We conclude that the failure to give the instruction was error, but the error was harmless on all but the theft conviction.

## FACTS

¶2 Mr. Walters, a former manager of the Pastime Bar in Ritzville, arrived at that establishment around 6:00 p.m. on February 25, 2010, and stayed until 1:30 a.m. the next morning. During that time he consumed at least seven beers and two other shots of alcohol. The bartender later described his intoxication level as a "four" on a one-to-ten scale. Two officers put his level of intoxication between four and six.

¶3 Ritzville Police Department Sergeant John Bartz encountered Mr. Walters in a nearby alley at 2:18 a.m. while the officer was checking a burglary complaint. Mr. Walters indicated he was out for a walk. The officer noted that Mr. Walters was holding keys on a square key ring with a large green carabiner. Mr. Walters put the key ring in his left pocket during the conversation.

¶4 Shortly after the bar closed at 1:30 a.m., the bartender noted that the bar keys were missing. After searching for half an hour, he called the manager. She came to the

bar and helped look. After another fruitless search, they called police and described the missing keys that were kept on a large green carabiner. Dispatch reported the theft and broadcast the description of the missing keys. Sergeant Bartz heard the description, remembered seeing the keys on Mr. Walters, and went looking for him.

¶5 Mr. Walters operated a video arcade not far from the bar. Sergeant Bartz went to the arcade. He looked through the window and saw Mr. Walters sleeping under an air hockey table. He knocked on the window and woke Mr. Walters, who let him in. The sergeant asked for the bar keys; Mr. Walters denied having them. Sergeant Bartz told Mr. Walters that he had the keys in his left pocket. Mr. Walters put his hand in the pocket and jiggled the key ring, but then denied having the keys. The sergeant reached in to the pocket and took the keys out while placing Mr. Walters under arrest.

¶6 Mr. Walters cursed the officer and resisted the arrest. Sergeant Bartz twice used his stun gun on Mr. Walters and called for backup. A second officer arrived, and the two were able to put Mr. Walters in the patrol car and transport him to jail. At the jail Mr. Walters continued to resist the officers and kicked one of them.

¶7 Charges of third degree assault, third degree theft, and resisting arrest were filed. Mr. Walters testified that he did not remember leaving the bar and had little memory of interacting with the officers. Defense counsel requested an intoxication instruction. The trial court declined to give one, concluding that doing so would require the jury to speculate about Mr. Walters' mental state. The jury convicted as charged.

¶8 The court imposed concurrent sentences. A Nevada conviction for the unlawful taking of a motor vehicle was included in the offender score on the assault conviction. The trial court found the crime to be the equivalent of Washington's second degree taking a motor vehicle.

¶9 Mr. Walters timely appealed to this court.

## ANALYSIS

¶10 This appeal presents three issues; the record permits us to address only two of them. The issues are considered in the order presented by the appellant.

¶11 *Seizure of the Keys.* Mr. Walters first argues that the keys were illegally seized from his pocket and should not have been used at trial. He alternatively argues that his trial counsel was ineffective for failing to seek suppression of that evidence. The record is insufficient for us to consider his claims.

¶12 As a general rule, Washington appellate courts will not consider an argument that was not first presented at the trial court. RAP 2.5(a). One exception to that rule is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). However, an alleged error is not manifest if there are insufficient facts in the record to evaluate the contention. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

¶13 The Sixth Amendment guarantees the right to counsel. To satisfy the constitutional command, an attorney must perform to the standards of the profession; failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *Id.* at 334-335. Ineffective assistance of counsel claims are adjudged under the standards of *Strickland v. Washington*, 466 U.S. 668, 689-691, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). That test is whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Id.* at 689-691.

¶14 There was no motion to suppress filed in this case. Typically, that means that the matter cannot be heard on appeal. *State v. Baxter*, 68 Wn.2d 416, 422-424, 413 P.2d 638 (1966) (untimely suppression motion in the trial court

waived objection). Mr. Walters nonetheless contends that RAP 2.5(a)(3) permits his challenge to be heard now. The parties present different theories on why the search was or was not valid. The State argues that both the open view and exigent circumstances doctrines justified the search. Analysis of either position requires factual determinations be made concerning the circumstances of the search and the existence of any exigencies. Trial courts, not appellate courts, make factual determinations. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009), *review denied*, 168 Wn.2d 1041 (2010). Without those factual determinations, this court simply is not in a position to rule on these arguments.

¶15 The same problem exists with the ineffective assistance claim. When pursuing an ineffective assistance argument on the basis of a failure to seek suppression, the defendant must establish that a motion to suppress likely would have been granted. *McFarland*, 127 Wn.2d at 333-334. That standard often cannot be met when the record lacks a factual basis for determining the merits of the claim. *Id.* at 337-338. This case is in the same circumstance. The facts are unsettled, and the parties have not had the opportunity to make their respective records. Because we do not know if a motion to suppress would have been granted, we cannot determine whether counsel performed ineffectively. Accordingly, we decline to consider this issue. In light of our reversal of the theft conviction, Mr. Walters can present this argument to the trial court on remand.

¶16 *Intoxication Instruction.* Mr. Walters next argues that the trial court erred in denying his request for an intoxication instruction. We agree.

¶17 By statute, Washington recognizes an intoxication defense. RCW 9A.16.090. The statute recognizes that whenever a crime has a "particular mental state," voluntary intoxication "may be taken into consideration in determining such mental state." *Id.* The instruction addressing this statute is found in 11 *Washington Practice: Washington*

*Pattern Jury Instructions: Criminal* 18.10, at 282 (3d ed. 2008).

¶18 The general rules governing jury instructions are well settled. Jury instructions are sufficient if they correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶19 A criminal defendant has a right to have the jury instructed on a defense that is supported by substantial evidence. *State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009). To receive a voluntary intoxication instruction regarding alcohol, a defendant must show "(1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected [the defendant's] ability to acquire the required mental state." *State v. Everybodytalksabout*, 145 Wn.2d 456, 479, 39 P.3d 294 (2002).

¶20 The three charged offenses all required a showing of intent. RCW 9A.36.031(1)(g); RCW 9A.56.020, .050; RCW 9A.76.040. The first element for obtaining an intoxication instruction was satisfied.

¶21 So was the second element. Intoxication or impairment from drug usage is a factual question that can be proved by lay testimony. *State v. Smissaert*, 41 Wn. App. 813, 815, 706 P.2d 647, *review denied*, 104 Wn.2d 1026 (1985). There must be a showing of drug or alcohol consumption and the effect of the consumption on the drinker. *See, e.g., Dana*, 73 Wn.2d at 535; *State v. Zamora*, 6 Wn. App. 130, 132, 491 P.2d 1342 (1971), *review denied*, 80 Wn.2d 1006 (1972). There was such evidence in this case. While the degree of intoxication was in dispute, there was

no question but that Mr. Walters had consumed at least nine drinks over the course of the evening and that they had affected him. The second element likewise was shown.

¶22 The third element is the more problematic one—did the intoxication affect Mr. Walters' ability to act intentionally? The case law is inconsistent. *Compare State v. Rice*, 102 Wn.2d 120, 122-123, 683 P.2d 199 (1984) (drunks who spilled beer and were uncoordinated while playing ping pong entitled to instruction; one felt no pain when hit by car), *with State v. Gabryschak*, 83 Wn. App. 249, 253, 921 P.2d 549 (1996) (intoxicated and angry man not entitled to instruction where no sign of alcohol's impact on reasoning abilities). In *Gabryschak*, the court drew a distinction between its fact patterns and those of several cases where there were physical manifestations of intoxication: *Rice*, 102 Wn.2d 120; *State v. Brooks*, 97 Wn.2d 873, 651 P.2d 217 (1982) (two day drinking binge; defendant had glassy eyes and slurred speech, and ate a spider while washing it down with whiskey); and *State v. Jones*, 95 Wn.2d 616, 622, 628 P.2d 472 (1981) (defendant with glassy eyes and slurred speech placed in "drunk tank").

¶23 We agree with *Gabryschak* that physical manifestations of intoxication provide sufficient evidence from which to infer that mental processing also was affected, thus entitling the defendant to an intoxication instruction. This case presents a close fact pattern because there is no direct evidence that intoxication affected Mr. Walters' mental state. When questioned in the alley at 2:18 a.m., Sergeant Bartz described Mr. Walters as having slurred speech, droopy, bloodshot eyes, and he swayed back and forth. At their later encounter, Mr. Walters did not respond to pain compliance techniques and the sergeant had to use a stun gun twice before he could restrain him. Consistent with *Rice*, it appears that there was sufficient physical evidence of intoxication to entitle Mr. Walters to the voluntary intoxication instruction. It was error to deny the instruction.

¶24 The remaining question is whether the error was meaningful or not. Instructional error is presumed prejudicial but can be shown to be harmless. *Rice*, 102 Wn.2d at 123. A nonconstitutional error such as this one is harmless if it did not, within reasonable probability, materially affect the verdict. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986).

¶25 Despite the absence of the instruction, the parties in closing argued whether or not Mr. Walters was too drunk to act intentionally. This strongly suggests that the error was not harmless because the jury lacked direction on how to apply the law to the intoxication. *See Rice*, 102 Wn.2d at 123. As to the theft conviction, we cannot find the error harmless. The third degree theft conviction is reversed, and the case is remanded for a new trial.

¶26 The other two convictions are differently situated. Those crimes were committed well after Mr. Walters left the bar and, presumably, he had begun to sober up some. More importantly, there is direct evidence that his mental state was not impaired. The assault was committed at the jail while officers were trying to book Mr. Walters into custody. He announced that he was going to kick Officer Cameron before he did so. In that circumstance, the failure to give the intoxication instruction was harmless error because there was no question but that Mr. Walters was acting intentionally.

¶27 Similarly, the evidence shows that he intentionally resisted arrest. Where he had been cooperating with the officer initially, his attitude changed when the keys were seized and he was arrested. A struggle ensued, a stun gun was repeatedly employed, and a second officer had to be called in to take Mr. Walters away. His resistive behavior continued at the jail, right up to the point where he announced his intention to kick the officer. At trial, Mr. Walters even admitted that he resisted arrest. In light of the evidence and the trial testimony, the intoxication instruction would not have affected the verdict.

¶28 The lack of an intoxication instruction was harmless error on the assault and resisting arrest instructions.

¶29 *Offender Score.* Mr. Walters also argues that the trial court erred in including a Nevada conviction in his offender score on the third degree assault conviction. The record establishes that the conviction was properly included in the offender score.

¶30 Out-of-state convictions are included in a Washington defendant's offender score if the foreign crime is comparable to a Washington felony offense. RCW 9.94A-.525(3). The State must establish comparability of the offenses, typically by proving the out-of-state conviction exists and providing the foreign statute for the court. *State v. Ford*, 137 Wn.2d 472, 479-482, 973 P.2d 452 (1999).

¶31 The State met its burdens in this case. Mr. Walters twice admitted during testimony that he committed the offense. His counsel argued at sentencing that the crime was only a misdemeanor under Nevada law[1] and should not be counted; he did not dispute that the conviction existed. Finally, the State had the Nevada sentencing transcript and read from it at sentencing. There was ample evidence of the Nevada conviction. It was not a contested issue in the trial court.

¶32 In addition to proving the existence of the offense, the prosecutor was also required to show that it was comparable to a Washington felony. That was done here. The State presented the Nevada statute[2] to the trial court, which compared the elements of the Nevada crime to Washington's second degree taking a motor vehicle without permission, RCW 9A.56.075. The trial court had a legal basis for making its comparability determination.

¶33 Mr. Walters points out that the Nevada statute does not require that a car be stolen with intent to permanently deprive the owner. He argues that intent to perma-

---

[1] Washington's classification scheme is relevant; how the foreign jurisdiction classifies its offenses is not. RCW 9.94A.525(3).

[2] NEV. REV. STAT. § 205.2715.

nently deprive is an element of all Washington theft convictions, citing to RCW 9A.56.020. While it is true that intent to permanently deprive is an element of a theft prosecution, it is not an element of taking a motor vehicle in the second degree, RCW 9A.56.075. Instead, that statute punishes what used to be known as "joyriding"—the intentional taking of another person's car, regardless of whether there was intent to permanently keep the vehicle. To that end, the statute simply requires that the defendant (1) intentionally take the vehicle of another (2) without permission. RCW 9A.56.075(1). Similarly, the Nevada offense likewise requires taking without permission. The trial court correctly found that the two offenses are comparable.

¶34 Washington classifies taking a motor vehicle in the second degree as a felony. RCW 9A.56.075(2). Thus, the Nevada conviction was correctly included in the offender score.

## CONCLUSION

¶35 The convictions for third degree assault and resisting arrest are affirmed. The conviction for third degree theft is reversed, and the case is remanded for further proceedings consistent with this opinion.

KULIK, C.J., concurs.

¶36 SWEENEY, J. (dissenting) — The jury, not this court or the trial court, should have been allowed to decide whether or not James Walters' level of intoxication was such that he was unable to form the necessary intent to commit these crimes. Neither court has the ability to divine whether a properly instructed jury would have concluded that Mr. Walters' level of intoxication inhibited his ability to form the requisite mens rea for each of these crimes. And, more significantly, Mr. Walters had a constitutional right to have a jury, rather a single judge or a panel of judges, make that determination. WASH. CONST. art. I, § 21.

¶37 A voluntary intoxication instruction allows a jury to consider the effect of voluntary intoxication by alcohol or drugs on a defendant's ability to form the necessary mental state for a charged crime. *State v. Coates*, 107 Wn.2d 882, 889, 735 P.2d 64 (1987). Indeed, our Supreme Court has held that a voluntary intoxication instruction, if requested, is mandatory because, without it, the jury is not informed of the legal significance of intoxication and counsel cannot effectively present the defense. *E.g.*, *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984).

¶38 The facts of this case, when viewed in a light most favorable to Mr. Walters, support a voluntary intoxication instruction. I, then, would conclude that it was prejudicial error not to give one.

¶39 A defendant is entitled to a jury instruction on his theory of the case when he produces sufficient evidence to support the instruction. *State v. Williams*, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997). Failure to then instruct is reversible error. *Id.* A defendant is entitled to a voluntary intoxication instruction when (1) the crime charged includes a mental state, (2) there is substantial evidence of drinking, and (3) there is substantial evidence that the drinking affected the defendant's ability to form the requisite intent or mental state. *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37 (1992). The evidence "must reasonably and logically connect the defendant's intoxication with the asserted inability to form the required level of culpability to commit the crime charged." *State v. Gabryschak*, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996).

¶40 The effects of alcohol are commonly known, and jurors can draw reasonable inferences from testimony about alcohol use. *State v. Thomas*, 123 Wn. App. 771, 782, 98 P.3d 1258 (2004); *State v. Kruger*, 116 Wn. App. 685, 692-93, 67 P.3d 1147 (2003); *State v. Smissaert*, 41 Wn. App. 813, 815, 706 P.2d 647 (1985). So neither this court nor the trial court is privileged to weigh the evidence here. The only question before us is whether there was sufficient evidence produced from which a jury could find that Mr. Walters'

level of intoxication affected his ability to form the intent necessary to commit these crimes. *Williams*, 132 Wn.2d at 259-60.

¶41 This court and the trial court must view the evidence and draw all reasonable inferences in the light most favorable to Mr. Walters. *State v. Douglas*, 128 Wn. App. 555, 561-62, 116 P.3d 1012 (2005). Circumstantial evidence is no less reliable than direct evidence. *State v. Liden*, 138 Wn. App. 110, 117, 156 P.3d 259 (2007). And credibility determinations are for the trier of fact, not us. *Id.* So when the evidence conflicts, like it does here, we must let the jury decide what evidence is most persuasive and then defer to that decision. *Id.*

¶42 When the evidence is viewed in a light most favorable to Mr. Walters, the evidence showed:

- The bartender said Mr. Walters arrived at about 6:00 p.m. and had seven beers and two shots of liquor.
- Mr. Walters said he arrived about 7:00 p.m. and had at least 10 beers and a number of shots.
- Mr. Walters did not remember leaving the bar.
- He had vague recollections of his interactions with the officers.
- He had slurred speech; had droopy, bloodshot eyes; and was swaying back and forth when he was in the alley at 2:18 a.m.
- He did not respond to pain compliance techniques: Officer Bartz had to use a stun gun twice to restrain him.
- The bartender rated Mr. Walters' intoxication as a 4 on a scale of 1 to 10.
- The officers rated Mr. Walters' intoxication as anywhere from a 4 to a 6.

Despite this evidence, the State vigorously argued "the evidence was not that he [Walters] was so intoxicated that he couldn't form an intent or know what was going on or know what he was doing." Report of Proceedings (Apr. 20, 2010) at 169.

¶43 The State relies on *Gabryschak*, 83 Wn. App. 249. There, the court begins its analysis with the observation that "[i]ntoxication is not an all-or-nothing proposition. A person can be intoxicated and still be able to form the requisite mental state, or he can be so intoxicated as to be unconscious." *Id.* at 254. The *Gabryschak* court's observations are correct. But it ignores an important question—who gets to decide that question, the jury or a panel of Court of Appeals judges? The court in *Gabryschak* then goes on to evaluate the trial evidence on the defendant's level of intoxication and finds that the defendant there was not drunk enough, as a matter of fact, to connect his level of intoxication to the mental state required to commit the crime. *Id.* at 254-55. Significantly, *Gabryschak* does not discuss or even mention what standard of review the court was applying. That is an important omission. The question before the court in *Gabryschak* and the question before us is whether the defendant has met his burden of production, *State v. Huff*, 64 Wn. App. 641, 655, 826 P.2d 698 (1992), that is, whether there was sufficient evidence presented to this jury to require the instruction. *Gallegos*, 65 Wn. App. at 237-38. Anything more moves us into deciding just how persuasive this evidence is. *See Gabryschak*, 83 Wn. App. at 254-55. And that is the jury's function. *Huff*, 64 Wn. App. at 655.

¶44 This court sits in Spokane and reads a cold record. We, or at least I, do not have any idea what a jury in Adams County would have found—beyond a reasonable doubt no less—if it had been properly instructed. There is certainly plenty of evidence that Mr. Walters knew what he was doing and could form the necessary intent despite his level of intoxication. But there is also ample evidence that he was drunk and could not have formed the intent necessary to commit these crimes, even if he wanted to form that intent.

¶45 The majority is willing to divine what a properly instructed jury would have decided on the assault and resisting arrest charges. I am not. There is evidence that Mr. Walters was drunk, and I am simply not comfortable

parsing out when this obvious intoxication affected his ability to form the necessary mens rea, when it did not, and ultimately whether the mental elements of these crimes were satisfied. Therefore, I respectfully dissent.