FILED
COURT OF APPEALS
DIVISION II

2015 APR -7 AM 9: 21

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45015-1-II |
| Respondent, | |
| v. | |
| SHAVON KEALALANI GARDNER, aka SHA'VON GARDNER, SHAVON KEALA GARDNER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Shavon Kealalani Gardner appeals her felony convictions for residential burglary and second degree taking a motor vehicle without permission, and three misdemeanor convictions for violations of a January 31, 2012 protection order. She argues that (1) the trial court violated her right to a fair trial when it erroneously admitted evidence that Gardner had been charged with a prior protection order violation; and (2) defense counsel provided ineffective assistance of counsel by failing to move for a mistrial after the jurors heard this evidence. Because Gardner failed to further object to admission of the audio recording, she failed to preserve this issue for review; she also failed to demonstrate manifest error affecting a constitutional right for

review under RAP 2.5(a)(3); and she failed to show that counsel was ineffective or that she was prejudiced. Accordingly, we affirm her convictions.

FACTS

Curtis Lee Parsons lives with his nine-year-old daughter, J.P.,[1] in Vancouver. J.P.'s mother is Shavon Kealalani Gardner, who had a long term relationship with Parsons that ended in February 2012. Earlier on January 31, 2012, Parsons obtained a domestic violence protection order prohibiting Gardner from having contact with Parsons or the minor, J.P., and prohibiting Gardner from coming within 500 feet of Parsons' residence.

On June 26, 2012, Parsons and a co-worker went to a job in White Salmon. Parsons' co-worker drove, and Parsons left his Ford Focus parked in his driveway, and left the babysitter at his house to babysit J.P. When the babysitter arrived, his Ford Focus was still parked in his driveway. At some point the babysitter took a shower and, when she got out of the shower, she discovered that Parsons' car was gone. Gardner took the car without Parsons' permission; his keys typically were left by the front door.

Gardner took J.P. to the apartment of David Michael Roby, a mutual friend of hers and Parsons. Gardner stated that she was looking for Parsons, but Roby told J.P. to come inside and directed Gardner to leave. After Gardner threatened to call the police, Roby revealed that he was aware of the protection order and Gardner immediately left in Parsons' car, leaving J.P. behind. Roby then contacted Parsons and the police.

---

[1] We use initials for the juveniles' names to protect their confidentiality.

Gardner then arrived at the house of Parsons' next-door neighbor, driving Parsons' Ford. After casual conversation with Parsons' neighbor, Gardner said that she wanted to go next door to Parsons' house to talk to him. Gardner walked into the neighbor's backyard, put a chair against the fence separating the neighbor's and Parsons' properties, and climbed over the fence into Parsons' backyard. About a half hour later, Gardner threw a bag over the fence into the neighbor's yard. The neighbor then texted Parsons, who told her that he was calling the police. At some point Gardner threw another bag over the fence into the neighbor's yard, climbed back over the fence herself, and placed the bags in the neighbor's garage.

The police arrived at Parsons' house after receiving a call that a burglary was in progress. Upon arrival, the police found no one inside the house. But in Parsons' backyard, police found a ladder placed up against the fence and a chair placed directly opposite on the other side of the fence in the neighbor's yard. Police then went to the neighbor's house next door, where they found Gardner and the neighbor.

Gardner initially denied going into Parsons' yard or his house, and claimed that she had been at the neighbor's house the entire afternoon. After police spoke with the neighbor, Gardner admitted that she had gone over the back fence into Parsons' yard, but stated that it was only to check on her dogs. After police confronted her with the two bags she had carried and left in the neighbor's garage, Gardner admitted that she had entered Parsons' house through the back door and took some property; the police found Parsons' temporary identification, social security card, and a pocket watch among the items taken. Gardner also admitted to driving Parsons' car but

claimed that he had given his keys to her. Police then took Gardner into custody for violating the January 31, 2012 protection order.

One month later on July 26, Parsons received a postcard from Gardner addressed to "D. Parsons." 1 Verbatim Report of Proceedings (VRP) at 89. Parsons has a son whose first initial is "D" and last name is Parsons but the content of the postcard related entirely to Curtis Parsons' relationship with Gardner. The January 31 protection order was still in effect when Parsons received the postcard.

The State charged Gardner with three felonies: including residential burglary,[2] second degree taking of a motor vehicle without permission,[3] and third degree theft;[4] and two misdemeanor counts of violating the January 31 protection order.[5] The State added domestic violence enhancements to the three felony charges under RCW 9.41A.535(3)(h)(ii) and RCW 10.99.020. Based on the July 26 postcard contact, the State amended the charges to add a sixth count of protection order violation under RCW 26.50.110(1).

During trial, outside the jury's presence, Gardner requested an offer of proof regarding the January 31 protection order underlying the three counts of protection order violations (counts 4, 5 and 6). In response, the State offered a video recording of the January 31 protection order hearing. Defense counsel objected that Gardner was wearing jail clothing and that Parsons could be heard

---

[2] Count 1, RCW 9A.52.025.

[3] Count 2, RCW 9A.56.075.

[4] Count 3, RCW 9A.56.020(1)(a), .050(1)(a).

[5] Counts 4 &5, RCW 26.50.110(1).

4

in the video recording referring to the charges Gardner faced. Defense counsel did not object to admission of the protection order, but argued that the audio recording was not relevant and was prejudicial. The court ruled that the State could not play the video portion of the recording, and could play only the limited portion of the audio recording where the judge spoke to Gardner about the no-contact restrictions. The State, prior to playing the audio, replayed the audio for the judge and defense counsel to ensure the correct portion was being played and they agreed to the version to be played to the jury. Gardner did not object further to the limited portion of the audio. The audio, played to the jury, included the following statement from the superior court to Gardner during the January 2012 hearing:

> [COURT:]: The Respondent, that's you, shall be allowed visitations to be set by further Court order. Violation of this order could mean that (unintelligible) further charges filed against you, do you understand?
> [GARDNER:] Yes. That means I can't see my kid.
> [COURT:] That's correct, not without further Court order.

1 VRP at 84.

A jury convicted Gardner of residential burglary, second degree taking of a motor vehicle without permission, and all three misdemeanor counts of violating the January 31 protection order. Gardner appealed.[6]

---

[6] Although Gardner appeals her entire judgment and sentence, she does not specifically address her convictions for residential burglary – domestic violence (count 1) or second degree taking a motor vehicle without permission – domestic violence (count 2).

ANALYSIS

For the first time on appeal, Gardner argues that the trial court erroneously[7] allowed the jury to hear evidence that she had been previously charged for violating a protection order. She argues that this evidence was not relevant or admissible under ER 402 and was more prejudicial than probative under ER 403, thus warranting reversal of her convictions.[8]

A defendant may challenge an alleged trial court error for the first time on appeal either: (1) by demonstrating that the error is a manifest error affecting a constitutional right and is prejudicial, warranting review under RAP 2.5(a)(3),[9] or (2) by demonstrating that the trial court counsel was ineffective for failing to raise the issue below. But because Gardner agreed to playing the limited portion to the jury and did not further object, we hold that she waived any objection on appeal and she fails to show that review is warranted under RAP 2.5(a)(3).

I. ADMISSION OF JANUARY 31 AUDIO RECORDING

Under RAP 2.5(a), we generally will not review claims raised for the first time on appeal, unless an exception can be shown, such as a manifest error affecting a constitutional right. *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011), *review denied by State v. Millan*, 180 Wn.2d 1003, 321 P.3d 1207 (2014). Generally evidentiary errors are not of constitutional magnitude. *In*

---

[7] Gardner does not cite the federal or state constitutional provisions but argues that the erroneous admission of the evidence requires reversal where the outcome of the trial would have been materially affected. She further argues that this evidence was not harmless.

[8] This argument applies only to the misdemeanor protection order violations, counts 4-6, not the felony convictions for burglary (count 1) or second degree taking a motor vehicle without permission (count 2).

[9] *State v. King*, 167 Wn.2d 324, 329, 219 P.3d 642 (2009).

*re Pers. Restraint of Duncan*, 167 Wn.2d 398, 408, 219 P.3d 666 (2009); *State v. Grier*, 168 Wn.

App. 635, 643 n.16, 278 P.3d 225 (2012), *cert. denied*, 135 S. Ct. 153 (2014).

At trial, the court agreed with defense counsel to limit the audio recording to only what the

judge told Gardner about the no contact restrictions and the judge's statement that any further

violations may result in further charges. Defense counsel, after listening to the limited audio, did

not object further.

Gardner has not argued nor shown that the admission of this evidence is a manifest error

affecting a constitutional right, nor has she shown that she was actually prejudiced by this remark

on the audio recording considering the evidence as a whole. Therefore, Gardner has waived this

issue on appeal. RAP 2.5(a).

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Gardner argues that defense counsel was ineffective by failing to move for a mistrial.[10]

Gardner argues that the initial error, in allowing the jury to hear evidence that she previously

violated a protection order, was compounded by the jury hearing more evidence about this subject

during Parsons' testimony.[11] We disagree; Gardner fails to show that defense counsel's

questioning of Parsons and counsel's decision not to move for a mistrial amount to deficient

performance and, even if deficient, Gardner fails to show that she was prejudiced.

---

[10] Gardner cites the federal and state constitutions guaranteeing the right to effective representation. U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22.

[11] Defense counsel asked Parsons if he knew why Gardner's jewelry was at his house and Parsons testified, "Every single thing that she owned when she went to the jail with the first no-contact order was left at my house." 1 VRP at 99. Defense counsel then asked Parsons why Gardner had a key to Parsons' home and he testified, "Maybe she had it on her possession the first time she got arrested. I have no idea." 1 VRP at 101-02.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). Representation is deficient if, after considering all the circumstances, "it falls 'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34 (citing *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

We presume that counsel's representation was effective, and the defendant has the burden to show that, based on the record, there are no "'legitimate strategic or tactical reasons'" for the challenged conduct. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012) (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)). "'Deficient performance is not shown by matters that go to trial strategy or tactics.'" *State v. Lewis*, 156 Wn. App. 230, 242, 233 P.3d 891 (2010) (internal quotation marks omitted) (quoting *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001)).

But "[e]ven deficient performance by counsel 'does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006) (quoting *Strickland*, 466 U.S. at 691). "A defendant must *affirmatively prove prejudice*, not simply show that 'the errors had some conceivable effect on the outcome.'" *Crawford*, 159 Wn.2d at 99 (quoting *Strickland*, 466 U.S. at 693).

In doing so, "[t]he defendant must show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Crawford*, 159 Wn.2d at 99-100 (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

Defense counsel's decision not to move for a mistrial was a tactical decision and may have been made for legitimate reasons. *Emery*, 174 Wn.2d at 755; *Lewis*, 156 Wn. App. at 242. "A mistrial should be granted when the defendant has been so prejudiced that nothing short of a new trial can [e]nsure that the defendant will be tried fairly." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). "The trial court has wide discretion to cure trial irregularities." *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992). Gardner fails to show any irregularity in the proceedings that would warrant a mistrial. Moreover, she fails to show that the trial court would have granted a motion for mistrial. *State v. Walters*, 162 Wn. App. 74, 81, 255 P.3d 835 (2011) (motion to suppress); *see State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007) (motion to suppress). Nor has Gardner shown that defense counsel's performance was deficient when he examined Parsons.

Because Gardner (1) failed to further object to the audio recording, she failed to preserve this issue for review; (2) failed to demonstrate a manifest error affecting a constitutional right for review under RAP 2.5(a)(3); and (3) failed to show that defense counsel was ineffective, we affirm

No. 45015-1-II

her convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Johanson, C.J.

Maxa, J.