IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79438-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KEITH JAMES WHEELER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

SMITH, J. — Keith Wheeler appeals his conviction for one count of assault in the third degree and one count of criminal trespass in the second degree. He contends that his counsel was ineffective for failing to request a jury instruction on voluntary intoxication. But Wheeler was not entitled to a voluntary intoxication instruction based on the record established below, and his counsel's failure to request one can be explained by a conceivable legitimate tactic. Therefore, we affirm.

FACTS

The State charged Wheeler with one count of assault in the third degree and one count of criminal trespass in the second degree following an incident that occurred in September 2018. At Wheeler's trial, Deputy Lane Campbell of the Island County Sheriff's Office testified that he responded to a 911 call regarding a suspicious person on property belonging to Brenda Ackley.

Citations and pin cites are based on the Westlaw online version of the cited material.

According to Deputy Campbell, when he arrived, Ackley explained that there was someone she did not know in a vehicle on her property and she wanted the person removed. Deputy Campbell drove to the location where Ackley told him the vehicle would be and found a man, later identified as Wheeler, sitting in the passenger seat of a car. Deputy Campbell contacted Wheeler and explained why he was there. He testified that Wheeler's "answers were very ambiguous, very vague about . . . why he was there, how long he had been there." According to Deputy Campbell, Wheeler was "sweating profusely" even though the outside temperature was in the mid-60s and Wheeler was "'on the nod,'" meaning that "[h]e'd be talking and then . . . stopping and almost like you're going [to] sleep for a second or so." Deputy Campbell also described Wheeler as "rather very paranoid of being contacted." Deputy Campbell testified that "with [his] training and 37 years of doing [ ]his job, it was [his] impression that [Wheeler] was probably under some form of narcotics."

Deputy Campbell told Wheeler that Ackley did not want Wheeler on her property. According to Deputy Campbell, he had no intention of arresting Wheeler; rather, "[a]ll [he was] trying to do [was] just get him off Ms. Ackley's property period. That's it." Deputy Campbell testified that because he believed Wheeler was too impaired to drive, he gave Wheeler "the option of getting a ride, walking out on his own, or he's going to go to jail." Deputy Campbell testified that he explained these options to Wheeler dozens of times throughout their contact, which ultimately lasted about an hour and a half. Deputy Campbell described Wheeler's response as "very argumentative. He's paranoid. He's going through

mood changes."

About 10 or 15 minutes into the contact, a second officer, Lieutenant Jeffrey Myers, arrived on scene and joined in Deputy Campbell's efforts "to negotiate a compromise to where nobody goes to jail." But, according to Deputy Campbell, Wheeler "was having none of it."

Lieutenant Myers also testified at Wheeler's trial. According to Lieutenant Myers, when it became clear that Wheeler was not going to leave voluntarily, Lieutenant Myers decided he "wanted to have something with teeth, if you will," so he had Ackley sign a "Trespass Admonishment" memorializing Wheeler's lack of authorization to be on the property and Ackley's desire that he not return. Lieutenant Myers then brought the Trespass Admonishment back to Wheeler, who at that point was standing outside of his car, and requested that he sign to acknowledge that he had received it. According to Lieutenant Myers, Wheeler then "backed up and started yelling that he wasn't going to sign anything and . . . started to argue about the whole process." After an additional exchange, Wheeler started walking back toward his car. Lieutenant Myers later testified that "at that point we knew if he got back in his car, we were going to be in another stalemate. And, quite honestly, we had been there long enough."

Deputy Campbell grabbed Wheeler's arm and placed him under arrest. Wheeler then began to struggle, but Lieutenant Myers stepped in, and ultimately the officers were able to handcuff Wheeler. When the officers tried to get Wheeler into the back of Deputy Campbell's patrol car, however, Wheeler was uncooperative. He stiffened up his body, and although Deputy Campbell put him

in wrist holds, Wheeler still would not comply. According to Deputy Campbell, the situation had gotten "to the point where we're physically going to have to hurt him to get him into the back of my car." And as the officers were "discussing issues of being pepper sprayed and maybe applying the taser, . . . [n]ext thing you know [Wheeler was] collapsing himself between [Deputy Campbell's] passenger door and the B-pillar of [the] patrol car trying to choke himself." Deputy Campbell testified that Wheeler was "screaming at the top of his lungs. 'Help me! Help me! The cops are trying to kill me.'"

At that point, the officers grabbed Wheeler and placed him on the ground. Wheeler was kicking. While Lieutenant Myers held Wheeler's torso, Deputy Campbell fought to put restraints on Wheeler's legs. Lieutenant Myers testified that as he held Wheeler down, he heard a "hawking loogie sound" and felt something hit his face and the front of his jacket. He testified that he then saw "a glob of spit on my glasses." Lieutenant Myers called an aid car, and ultimately, Wheeler was taken away in the aid car on a gurney.

A jury convicted Wheeler as charged. Wheeler appeals.

ANALYSIS

Wheeler contends that his conviction must be reversed because his counsel was ineffective for failing to request a voluntary intoxication instruction. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16

4

P.3d 601 (2001). "A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." State v. Salas, 1 Wn. App. 2d 931, 949, 408 P.3d 383 (2018). We review ineffective assistance claims de novo. Brett, 142 Wn.2d at 873.

To establish ineffective assistance based on counsel's failure to request a jury instruction, the defendant must show that he was entitled to the instruction, counsel was deficient in failing to request it, and failure to request the instruction caused prejudice. State v. Johnston, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007). "The burden is on the defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below." State v. Classen, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

As further discussed below, because Wheeler was not entitled to a voluntary intoxication instruction and because his counsel was not deficient for failing to request it, his ineffective assistance claim fails.

*Wheeler Was Not Entitled to the Instruction*

To be entitled to a voluntary intoxication instruction, the defendant must show "(1) one of the elements of the crime charged is a particular mental state, (2) there is substantial evidence that the defendant ingested an intoxicant, and (3) evidence that his ingestion of an intoxicant affected his ability to acquire the required mental state for the crime." Classen, 4 Wn. App. 2d at 536. "To satisfy the third element, there must be substantial evidence of the effects of the intoxicants on the defendant's mind or body." Classen, 4 Wn. App. 2d at 536. Specifically, because "[a] person can be intoxicated and still be able to form the

requisite mental state to commit certain crimes," "[t]he evidence must reasonably and logically connect a defendant's intoxication with his inability to form the requisite mental state."  Classen, 4 Wn. App. 2d at 536-37.

Here, the crimes charged—assault and trespass—each had a particular mental state.[1]  But even assuming that there was substantial evidence that Wheeler had ingested an intoxicant, there was *no* evidence logically connecting his intoxication with his ability to acquire the required mental states for the crimes with which he was charged.

Classen is instructive in this regard.  There, the State charged Darrell Classen with multiple crimes arising from Classen's actions after he accepted a ride from Crista Cole, an acquaintance, one morning in September 2015.  Classen, 4 Wn. App. 2d at 526, 528.  While Classen was in Cole's car, he poked Cole's ribs and grabbed her hair.  Classen, 4 Wn. App. 2d at 526-27.  He later punched Cole in her ribs, head, and face, and directed her to drive, threatening to slit her throat and cutting her arm with scissors that he found in Cole's car.  Classen, 4 Wn. App. 2d at 527.  Cole eventually escaped with the help of bystanders, who restrained Classen until the police arrived.  Classen, 4 Wn. App. 2d at 528.  At Classen's trial,

> Cole testified that Classen had never acted unusual around her but that on the day of the incident, Classen was "saying a bunch of stuff that didn't really make sense at the time" and called her a "cop" and a "fed."  [A bystander] testified that Classen said "odd" things like

---

[1] The jury was instructed that "[a]n assault is an *intentional* touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person" and that "[a] person commits the crime of criminal trespass in the second degree when he or she *knowingly* enters or remains unlawfully in or upon premises of another."  (Emphasis added.)

"'I'm going to live my life'" and would count to five and attempt to break free of restraints. [Another witness] stated that Classen was "talking and talking and talking" and appeared agitated. [And the responding officer] testified that Classen was making "weird nonsensical statements" and odd noises and appeared to be under the influence.

Classen, 4 Wn. App. 2d at 537 (citations omitted). A jury found Classen guilty as charged. Classen, 4 Wn. App. 2d at 530.

On appeal, Classen, who had been diagnosed with amphetamine use disorder before trial, argued that the testimony from Cole and other witnesses "shows that he lacked the ability to form the required level of culpability to commit the crimes charged." Classen, 4 Wn. App. 2d at 528, 537. We disagreed and observed that even assuming that there was substantial evidence of intoxication, "Classen failed to provide any evidence about how methamphetamine affected his ability to form the requisite mental states for the crimes." Classen, 4 Wn. App. 2d at 537. We observed further that

[a]lthough . . . Sergeant Geddry[, the responding officer,] testified that Classen appeared to be under the influence, Sergeant Geddry did not testify as to what type of drug or intoxicant he suspected Classen to be under the influence of. Sergeant Geddry also did not testify as to whether methamphetamine or heroin affects a person's ability to form the requisite intent to commit the crimes of kidnapping or assault. Because it is not common knowledge that methamphetamine or heroin can affect a person's ability to form the requisite intent, Classen needed to provide competent evidence to show his ability to form intent was affected. But here, Classen failed to introduce any evidence about the effect methamphetamine had on his ability to form the requisite intent.

Classen, 4 Wn. App. 2d at 537-38. Thus, we concluded, "there is no evidence to suggest that Classen lacked the ability to form the requisite mental state," and "Classen cannot show that a voluntary intoxication instruction likely would have

7

been given." Classen, 4 Wn. App. 2d at 538. We held, consequently, that "Classen's counsel did not provide ineffective assistance for failing to seek a voluntary intoxication instruction." Classen, 4 Wn. App. 2d at 538.

Here, as in Classen, even assuming that there was substantial evidence that Wheeler was intoxicated, there was no evidence to suggest that Wheeler lacked the ability to form the mental state required for the crimes with which he was charged. Specifically, as Wheeler correctly points out, the officers testified that Wheeler was "sweating profusely," seemed oblivious to pain, drifted in and out of consciousness, was paranoid, talked a lot and spoke in "gibberish," seemed confused, did not comply with the officers' requests, was slow to respond to questions, and was unable to maintain a train of thought. But this testimony establishes, *at most*, that Wheeler was under the influence of something. It does not, as required to support a voluntary intoxication instruction, "reasonably and logically connect [Wheeler]'s intoxication with his inability to form the requisite mental state." Classen, 4 Wn. App. 2d at 536; cf. State v. Gabryschak, 83 Wn. App. 249, 253, 921 P.2d 549 (1996) ("Evidence of drinking alone is insufficient to warrant the instruction; instead, there must be 'substantial evidence of the effects of the alcohol on the defendant's mind or body.'" (quoting Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 179, 817 P.2d 861 (1991))). Therefore, Wheeler was not entitled to a voluntary intoxication instruction.

Wheeler disagrees and contends that "[p]hysical manifestations of intoxication may be sufficient to support a finding that mental processing was affected, thus entitling the defendant to an intoxication instruction." He relies on

8

State v. Walters, 162 Wn. App. 74, 255 P.3d 835 (2011), and State v. Kruger, 116 Wn. App. 685, 67 P.3d 1147 (2003), to support this proposition.  But in each of those cases, there was evidence that the defendant had ingested alcohol. See Walters, 162 Wn. App. at 78 ("After a night of heavy drinking, James Walters stole some keys and later fought with a police officer."); Kruger, 116 Wn. App. at 688 ("Kruger showed up at [someone]'s house drunk.").  And as we explained in Classen, "'[t]he effects of alcohol are commonly known and jurors can draw reasonable inferences *from testimony about alcohol use*.'"  4 Wn. App. 2d at 537 (alteration in original) (emphasis added) (quoting State v. Thomas, 123 Wn. App. 771, 782, 98 P.3d 1258 (2004)).  Here, there was no testimony about alcohol use.  Therefore, Wheeler's reliance on Walters and Kruger is misplaced.

*Wheeler's Counsel Was Not Deficient for Failing To Request the Instruction*

Wheeler's ineffective assistance claim also fails because his counsel was not deficient for not requesting a voluntary intoxication instruction.  Specifically, and as discussed, Wheeler was not entitled to the instruction.  See State v. Flora, 160 Wn. App. 549, 556, 249 P.3d 188 (2011) ("[I]f the defendant would not have received a proposed instruction, counsel's performance was not deficient.").

Furthermore, counsel's conduct is presumed effective and is not deficient if it "can be characterized as legitimate trial strategy or tactics."  State v. Kyllo, 166 Wn.2d 856, 862-63, 215 P.3d 177 (2009).  Here, the record reveals a conceivable and legitimate tactic that explains counsel's decision not to pursue a voluntary intoxication defense.  Specifically, in colloquy that took place outside the presence of the jury, the State indicated that it intended to introduce excerpts

9

of a jail call between Wheeler and a bail bondsman. According to the prosecutor, Wheeler stated on the call, "'My vehicle was parked somewhere and[ ] . . . I had a sheriff roll up on me, asked me to leave and then they wouldn't let me leave. They wanted me to walk away and I was refusing. So they hit me with a trespass.'" When the bail bondsman asked Wheeler why he refused, Wheeler responded, "'Because I was in the middle of nowhere. And wasn't trying to be walking down the highway . . . and leaving my vehicle somewhere for it to get broken into.'" The State initially indicated that it planned to call a detective as a witness to authenticate the jail call. Later, however, the State decided not to call the detective in its case in chief, but instead to "[s]ave his testimony for rebuttal, if necessary."

The existence and nature of the jail call, in which Wheeler cogently explained his reasons for refusing to leave the scene voluntarily, gives rise to a conceivable and legitimate reason why Wheeler's counsel decided not to pursue a voluntary intoxication defense and, thus, not to request a voluntary intoxication instruction. Specifically, had Wheeler decided to pursue the defense, the State would likely have introduced the jail call to show that Wheeler knew exactly what he was doing during his interaction with the officers. And this evidence would have impeached, rather effectively, any evidence that Wheeler was unable to form the requisite mental states for assault and trespass. For these and the other reasons already discussed, counsel's performance was not deficient and Wheeler's ineffective assistance claim fails.

10

We affirm.

_____

WE CONCUR:

Andrus, A.C.J. _____      _____