[No. 25788-9-I.   Division One.   February 10, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH HACKETT, *Appellant*.

*Joshua Weinstein* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Denis O'Leary, Deputy,* for respondent.

PER CURIAM. — Kenneth Hackett filed a motion on the merits to reverse his conviction for first degree assault.[1] Following a hearing on the motion, a commissioner of this court referred the motion to this panel pursuant to RAP 18.14(d) with a recommendation that the motion be granted. We grant the motion and reverse and remand the assault conviction.

## FACTS

On May 10, 1989, King County Police Officer Shaw was on a routine patrol when he noticed a Datsun pickup truck speeding. Officer Shaw stopped the vehicle and contacted the driver, Mr. Hackett. Officer Shaw noticed that Hackett's hand was shaking, his limbs and lips were blue, his general appearance was unkempt, and he looked forward almost the entire time, never looking directly toward Shaw. According

---

[1] Hackett was also convicted of possession of cocaine, but he has not challenged that conviction on appeal. Hackett's trial counsel conceded in closing that Hackett was guilty of the possession charge.

to Shaw, Hackett was not responding in a "normal" manner, appeared nervous, and possibly was under the influence of drugs or alcohol.

Shaw requested Hackett's driver's license and the truck's registration. Hackett responded that he had lost his wallet and that his name was Sanderson. Hackett also gave Shaw a date of birth. Shaw checked the name "Sanderson" and the date of birth given by Hackett, and was informed that there were no computer records regarding "Sanderson". Shaw went back to the vehicle and told Hackett that no computer records were found for "Sanderson" and the date of birth. Hackett then gave Shaw another date of birth, explaining that he was nervous. The new date of birth again yielded no computer record, and Shaw walked back toward Hackett's vehicle.

As Shaw reached the pickup truck he heard a gun, smelled gunpowder, and realized Hackett had shot at him. The bullet hit Shaw's police radio, which was strapped to his belt. As Shaw returned to his vehicle to call for help, he saw Hackett "cradling" a gun and looking back at him as if to see if he was going to fall over. Hackett's truck pulled away unhurriedly, and Officer Shaw was "shocked" by how long it took the truck to drive away.

A short time later, King County Police Officer Barth arrived at a nearby parking lot where Hackett's abandoned truck was found. Aided by a dog tracking team, Barth tracked and eventually found Hackett in some brush. Police officers discovered a quantity of cocaine, as well as other items, in the area where Hackett was found.

Officer Barth testified that while Hackett was at the police station being treated by paramedics for injuries caused by the police dog, he was very shaken and appeared to be under the influence of narcotics. After the paramedics left, Hackett became extremely violent, "banging himself around", "crashing into the wall", and "trying to strike his head against the table and against things surrounding him. . . ." Hackett was then transported to Harborview hospital.

Dr. Schwartz evaluated Hackett at Harborview hospital on May 10, 1989. Hackett was having a seizure, was unconscious, and had difficulty breathing. Dr. Schwartz administered Valium to abort Hackett's seizure and pumped his stomach. A tube was placed in Hackett's windpipe to administer oxygen and help him breathe. Dr. Schwartz testified that Hackett's seizure could have resulted from cocaine ingestion.

Dr. Graft, a neurologist at the University of Washington, treated Hackett in Harborview hospital for the seizure he suffered on May 10, 1989. Hackett was diagnosed as having a "toxic encephalopathy", or a disturbance in brain functioning "because of ingestion of a drug." Dr. Graft testified that Hackett was in intensive care for 2 days, and was connected to a breathing machine for 36 hours because he was unable to breathe on his own. Dr. Graft performed a CT scan to confirm that the seizure was not a result of injuries to Hackett's head. It was Dr. Graft's medical opinion that the drugs most likely caused the seizure.

Dr. Formoso, a forensic toxicologist for the Washington State Toxicology Lab, testified that he received a sample of Hackett's blood and tested for the presence of drugs. Dr. Formoso found the blood contained Valium and cocaine, as well as metabolites of Valium and cocaine. Dr. Formoso's tests revealed that Hackett's blood contained 0.2 milligrams per liter of Valium and 0.1 milligrams of the metabolites of Valium as well as 2.87 milligrams per liter of cocaine and 6.5 milligrams per liter of cocaine metabolites. According to Dr. Formoso, Hackett's levels of the cocaine and cocaine metabolites alone were consistent with a lethal level; 1.0 milligrams per liter of cocaine is a potentially lethal level.

Dr. McMahon, a psychologist, testified that Hackett informed her that on May 10, 1989, he ingested considerable amounts of cocaine and "began to hallucinate. So he took a handful of Valium". He received a phone call and "[t]hat was the last thing he remembered . . . until he woke up in Harborview two or three days later[,] with the exception of

some memory patches, memory traces." Dr. McMahon testified that based upon Hackett's medical records, the amount of drugs he ingested that day, and other factors, she believed Hackett was unable to form the intent to inflict great bodily harm on Officer Shaw on May 10, 1989.

Defense counsel requested the court to instruct the jury on "voluntary intoxication", but the court denied the request, stating: "I find that the instruction deals with alcohol and there is no evidence of any alcohol in the defendant's blood at the time of the alleged incident." Defense counsel argued that the instruction applied to drugs as well as alcohol and took exception to the court's failure to give the instruction.

On November 30, 1989, the deliberating jury asked the court, "Is it possible to remove the plastic strap from the .44 gun cylinder so that we can determine the amount of trigger pressure necessary to fire the gun?" The judge responded "No". The jury subsequently convicted Hackett of assault in the first degree and possession of cocaine.

After trial, defense counsel moved for a new trial based on juror misconduct. The supporting affidavits alleged that during deliberations, a juror shared firearms information with the other jurors which was not presented by any witness at trial. The affidavits stated that the juror told the other jurors that he was familiar with the type of gun used by Hackett, and that he explained its operation. In denying the motion for a new trial, the trial court stated: "I find nothing which indicates that Mr. Jordan's demonstration in any way convinced the jurors of the guilt or innocence of the defendant." Hackett then appealed to this court.

### Decision

█ Hackett contends the trial court erred in refusing to give the jury his proposed instruction on voluntary intoxication. The trial court refused the intoxication instruction because it believed that the instruction applied only to alcohol intoxication. The court's ruling was contrary to *State v. Dana*, 73 Wn.2d 533, 439 P.2d 403 (1968), *State v. Conklin*, 79 Wn.2d 805, 489 P.2d 1130 (1971), and *State v. Zamora*, 6

Wn. App. 130, 491 P.2d 1342 (1971) (holding that "intoxication" includes intoxication from alcohol or drugs), *review denied*, 80 Wn.2d 1006 (1972). The State concedes that the court's reason for refusing the instruction was improper, but argues that no error occurred because the instructions given allowed defense counsel to argue her theories to the jury. We disagree.

■■ Each side is entitled to have the trial court instruct upon its theory of the case if, as here, there is evidence to support that theory.[2] *State v. Dana, supra.* However, a requested instruction need not be given if the subject matter is adequately covered elsewhere in the instructions. *State v. Ng*, 110 Wn.2d 32, 41, 750 P.2d 632 (1988). Instructions are sufficient if they are not misleading, are a correct statement of the law, and allow the defendant to satisfactorily argue his theory of the case. *State v. Hansen*, 46 Wn. App. 292, 730 P.2d 706, 737 P.2d 670 (1986); *Ng*, at 41.

In this case, the subject matter of the proposed instruction on voluntary intoxication was not adequately covered elsewhere in the instructions. None of the instructions discussed intoxication or its relationship to the element of intent.

■ Nor were the instructions given by the court sufficient to allow Hackett to satisfactorily argue his theory of the case. The general instructions regarding the element of intent were not sufficient, by themselves, to allow Hackett to argue his intoxication theory. *See Conklin*, at 807-08; *State v. Griffin*, 100 Wn.2d 417, 419-20, 670 P.2d 265 (1983).

---

[2]An instruction on voluntary intoxication is warranted where the crime involves a particular mental state and there is substantial evidence that the defendant was in fact intoxicated at the time the crime was committed and that the intoxication affected his ability to acquire the requisite mental state. *State v. Sandomingo*, 39 Wn. App. 709, 695 P.2d 592, 70 A.L.R.4th 1021 (1985); *State v. Simmons*, 30 Wn. App. 432, 635 P.2d 745 (1981), *review denied*, 97 Wn.2d 1007 (1982). The crime at issue in this appeal, *i.e.*, first degree assault, required the particular mental state of intent to inflict great bodily harm, RCW 9A.36.011, and there was substantial evidence that Hackett was intoxicated at the time of the offense and that his ability to form the requisite intent was affected by his intoxication.

Similarly, the only instruction regarding mental state evidence — instruction 18 — was also insufficient. It stated:

> Whenever the actual existence of any particular mental state is a necessary element to constitute a particular crime, *the fact of mental illness or disorder* may be taken into consideration in determining such mental state.

(Italics ours.) By contrast, Hackett's proposed instruction on voluntary intoxication, which is essentially identical to WPIC 18.10, stated:

> No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, *the fact of his intoxication* may be taken into consideration in determining such mental state.

(Italics ours.) While instruction 18 allowed the jury to consider any "mental illness or disorder" in addressing the mental element of the assault, it said nothing about considering the defendant's "intoxication". It would be unreasonable to interpret the words "mental illness or disorder" in instruction 18 as allowing a jury to consider evidence of voluntary intoxication because intoxication is not commonly thought of as a "mental illness or disorder". Faced with instruction 18, a reasonable jury would likely have concluded that it could consider the intoxication evidence only to the extent that it demonstrated a "mental illness or disorder". Thus, under the court's instructions, even if the jury found that Hackett's voluntary intoxication affected his ability to form the requisite intent, it could have still found him guilty if no "mental illness or disorder" was shown. Therefore, the court's instructions did not allow Hackett to satisfactorily argue his intoxication theory to the jury, and the refusal of Hackett's proposed instruction was error.

■ The State's argument that any error was harmless because Hackett actually argued his theory to the jury is meritless. Defense counsel did in fact argue that Hackett was suffering from a drug overdose at the time of the assault and that he therefore could not form the requisite

intent. However, whether counsel in fact argued his theory of the case is not the applicable test; the test for sufficiency of instructions is whether *the court's instructions* afforded counsel a satisfactory opportunity to argue his theory to the jury. *Dana*, at 537; *see State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984). The court's instructions in this case did not afford counsel that opportunity because they stated only that a "mental illness or disorder" could be considered in determining whether Hackett had formed the requisite intent.[3]

■ An error in instructions is harmless if it has no effect on the final outcome of the case. *State v. Rice, supra* at 123. The previous discussion demonstrates that the jury could well have returned a different verdict had it been instructed on voluntary intoxication; therefore, the error was not harmless. *See Rice*, at 123. Given our resolution of this issue, we need not reach Hackett's argument that the trial court erred in denying his motion for a new trial based on juror misconduct.

The assault conviction is reversed and remanded for a new trial.

---

[3]This court's decision in *State v. Hansen*, 46 Wn. App. 292, 730 P.2d 706, 737 P.2d 670 (1986), which is not cited by the parties, is distinguishable. There, the trial court gave the jury an intoxication instruction, but refused the defense's proposed instruction on diminished capacity. This court held that while there was substantial evidence supporting Hansen's theory that his drug intoxication produced a mental disorder, that theory could be argued under the court's intoxication instruction and the court did not err in refusing to give a diminished capacity instruction. The *Hansen* court apparently concluded that the language of the intoxication instruction was broad enough to encompass a diminished capacity theory based on "mental disorders" caused by long-term drug intoxication. However, while the language of an intoxication instruction may be broad enough to encompass diminished capacity theories based on mental disorders caused by past intoxication, the reverse is not necessarily true. The language of the diminished capacity instruction given in this case is not broad enough to encompass a theory based on voluntary intoxication which falls short of causing a "mental illness or disorder".