IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

          Appellant,

   v.

MOSTAFA VALAEI-BARHAGH,

          Respondent.

No. 84451-2-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Mostafa Valaei-Barhagh appeals his jury convictions of criminal trespass in the first degree, burglary in the second degree with sexual motivation, and attempting to elude a pursuing police vehicle. He contends that the trial court erred in denying his request for a voluntary intoxication instruction. Because the evidence did not support giving such an instruction, we affirm.

FACTS

On February 7, 2021, Valaei-Barhagh pulled his white van up to the drive-through window of Ladybug Espresso, a bikini barista stand in Seattle. At the time he arrived, the sun had already set and it was dark outside. Valaei-Barhagh ordered a small black coffee and a bagel, totaling $15. He handed the barista, Michaela Hiner, a $20 bill and told her to keep the change. Valaei-Barhagh did not engage when the

Citations and pincites are based on the Westlaw online version of the cited material.

barista attempted a conversation.  The barista handed Valaei-Barhagh his food and drink before starting to close the drive-through window.  As she closed the window, Valaei-Barhagh silently handed her a $50 bill, she thanked him and waited several seconds before closing and locking the window.  A few seconds later, Valaei-Barhagh began to loudly bang on the window with his fist while still seated in his car.  After pounding on the window for a few minutes, Valaei-Barhagh got out of his car and went to the stand's screen door and attempted to open it.  The security camera monitor in view of the barista showed that Valaei-Barhagh was shaking the door and attempting to open the deadlock by force.  Valaei-Barhagh then yelled to the barista that he was going to come back and she responded by saying she was going to call the police. Valaei-Barhagh left before police arrived.

Three days later, on February 10, Valaei-Barhagh again drove up to Ladybug Espresso's drive-through window.  The barista working at the time, Capri Hulsey, noted that the interaction was normal.  Valaei-Barhagh told her that he was going through a divorce and living in his van before asking if he could return to the stand later.  Hulsey told him that the stand was open until 8 p.m.  Before leaving, Valaei-Barhagh gave Hulsey a tube of lipstick without explanation.

Valaei-Barhagh returned between 5 and 6 p.m. that day and again drove his van up to the stand's drive-through window.  Hulsey noted that Valaei-Barhagh's demeanor had changed and that he "seemed a little off" but was "not sure why."  Valaei-Barhagh was slurring and tripping over his words.  Hulsey testified that Valaei-Barhagh "seemed to be under the influence of some kind" but conceded that she had not considered other possible reasons for the strange behavior, such as mental illness.

During their conversation, Valaei-Barhagh began asking Hulsey "sexually charged" questions that made her uncomfortable. Valaei-Barhagh asked to touch, squeeze, and kiss her. Hulsey told him no. Valaei-Barhagh then asked if he could pay to meet Hulsey, which she understood as a solicitation to pay for sex. Hulsey again told him no. In an effort to get Valaei-Barhagh to leave, Hulsey told him that the stand was closing. Valaei-Barhagh then asked if he could come inside the stand to wash his hands. After Hulsey refused, Valaei-Barhagh asked for a paper towel, which Husley agreed to. When Hulsey turned around to get a paper towel she heard "boots hit the floor" after Valaei-Barhagh climbed through the open window. Once she realized Valaei-Barhagh was inside the stand, Hulsey was "terrified" and pointed a mace gun at him while telling him to leave. Hulsey moved toward the door in case she need to run and Valaei-Barhagh climbed back out the window and drove away. Hulsey called the police.

Thirty minutes later, before the police arrived, Valaei-Barhagh returned to the drive-through window in his van and yelled at Hulsey through the closed window. Hulsey could not hear what Valaei-Barhagh was yelling. Hulsey called police again. A regular customer arrived and pulled up behind the van, then Valaei-Barhagh drove away.

Valaei-Barhagh then drove to the office of his former employer, Southwest Plumbing. Valaei-Barhagh crashed his van into an employee's truck parked on the street outside, pushing it into the grass nearby. Valaei-Barhagh continued into the company's parking lot at approximately 20 miles per hour, before colliding with a box truck. Valaei-Barhagh then got out of the van and began yelling. After leaving the van,

3

Valaei-Barhagh asked if someone had a gun because he wanted to get shot. One Southwest employee went outside after watching the crash through his window and saw Valaei-Barhagh get out of the van "mumbling" and speaking "gibberish." Valaei-Barhagh then said he could not take what was going on in the country before turning his backside toward the employee and backing up toward him while repeatedly asking "do you want to fuck me?" The employee returned inside and called police.

Another employee learned of the commotion and crash and went outside. Valaei-Barhagh then asked this employee if he wanted to fight and told him, "I'll fuck you." The employee waved Valaei-Barhagh off and turned to walk back in the building when Valaei-Barhagh slapped him on his butt. Valaei-Barhagh then got back in the van and appeared to light something.

Police officer Derrick Boon arrived at Southwest Plumbing and found Valaei-Barhagh in the driver's seat of his van smoking a pipe. Valaei-Barhagh got out of the van and Boon took him to sit on the front of the patrol car. Boon observed that Valaei-Barhagh seemed "very calm" and "unconcerned," but began yelling and getting angry as they spoke. Boon testified that he believed Valaei-Barhagh was under the influence but stated that he did not conduct any field sobriety tests, did not smell alcohol on Valaei-Barhagh, and did not smell cannabis on Valaei-Barhagh or the pipe he was smoking. Although Boon saw cannabis products in Valaei-Barhagh's van, he did not see if they were opened.

Valaei-Barhagh was charged with one count of attempted burglary in the second degree committed with sexual motivation in violation of RCW 9A.28.020, RCW 9A.52.030, and RCW 9.94A.835; one count of burglary in the second degree committed

4

with sexual motivation in violation of RCW 9A.52.030 and RCW 9.94A.835; one count of attempting to elude a pursuing police vehicle in violation of RCW 46.61.024; and one count of driving under the influence in violation of RCW 46.61.502 and .506.

The State sought to submit body worn camera footage of Valaei-Barhagh's arrest in which he made statements to police regarding consuming "weed" and how he loved the barista at the Ladybug Espresso stand who took his money but did not kiss him.[1]

---

[1] In the video, Valaei-Barhagh has a smoking pipe in his mouth and can be seen exhaling smoke. Boon reads Valaei-Barhagh his Miranda rights and Valaei-Barhagh indicated he understood his rights by nodding. Boon then asked about what was going on while another officer removed the pipe from Valaei-Barhagh's mouth. Valaei-Barhagh responded,

| | |
|---|---|
| Valaei-Barhagh: | That was good. |
| Boon: | What was good? |
| Valaei-Barhagh: | That weed. |
| Boon: | Yeah? That weed was good? What else have you had today? |
| Valaei-Barhagh: | Uh, I had [inaudible] and uh food. I had breakfast. I had lunch. I had a lot of coffee. And, what else I had? I don't know. |
| Boon: | How much weed have you had today, man? |
| Valaei-Barhagh: | I don't know. |
| Boon: | Would you say like a lot? |
| Valaei-Barhagh: | Like thousand milligram. |
| Boon: | A thousand milligrams of weed? |
| Valaei-Barhagh: | Yeah. I like that weed. |
| Boon: | Yeah? |
| Valaei-Barhagh: | Yeah. |

When Boon asked Valaei-Barhagh to explain what was going on with the barista at Ladybug Espresso, he stated,

| | |
|---|---|
| Valaei-Barhagh: | Oh, she was pretty. |
| Boon: | Yeah? |
| Valaei-Barhagh: | Yeah, I love her. |
| Boon: | Tell me more, tell me more about that. |
| Valaei-Barhagh: | I loved her. |
| Boon: | Yeah? Tell me more, man. |
| Valaei-Barhagh: | That motherfucker took my money and didn't kiss my lips. |
| Boon: | Oh, that's terrible. |
| Valaei-Barhagh: | She didn't love my lips. |
| Boon: | Oh, I'm sorry. This must be rough. |
| Valaei-Barhagh: | Bitch. Whore. |
| Boon: | Yeah, right? |

Prior to trial, the court granted a defense motion to exclude the body camera footage because Valaei-Barhagh had not made a knowing, intelligent, and voluntary waiver of his Miranda[2] rights.

At trial, the defense made clear the defense theory was about a misunderstanding "greatly exacerbated by a mental health crisis."  During opening statements, the defense told the jury that at the time of the offenses Valaei-Barhagh was experiencing a "profound mental health crisis" and both auditory and visual hallucinations.  His attorney stated that

> Mr. Valaei-Barhagh is also charged with a DUI.  You will hear no evidence about any chemicals or substances that may have been in his blood. Nothing.  The only testimony you will have are from the lay witnesses who are not experts.  And they will both tell you it is equally as likely that he was having a severe mental health crisis.

During trial officer Boon testified that he believed Valei-Barhagh was under the influence but conceded during cross examination that it can be difficult to tell the difference between intoxication and symptoms of a mental health crisis.

After the State rested, the defense moved to dismiss the DUI charge, arguing that the state had failed to meet its burden to prove that Valaei-Barhagh's ability to drive was affected by drugs or alcohol.  The defense argued

> Here the evidence or lack of evidence shows, no evidence of a drug test for intoxicants.  No evidence of a blood test results [sic] for intoxicants.  No evidence of observations of bad driving that would be associated with a DUI, I believe Officer Boon testified that he looks for

---

| Valaei-Barhagh: | Yeah. |
| Boon: | Dang, man.  I'm sorry, that's rough. |
| Valaei-Barhagh: | She fucked me up. |
| Boon: | Yeah?  So what - |
| Valaei-Barhagh: | She really fucked my mind. |

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

evidence of driving that would be essentially bad.  Swerving, weaving, things of that nature, no testimony that that occurred.

The defense continued, arguing that officers did not conduct field sobriety tests, did not conduct a drug recognition exam, did not smell or detect any odors of cannabis, alcohol, or other drugs, and found no open containers at the scene.  The judge granted the motion and dismissed the charge, finding that the state had not provided sufficient evidence to meet its burden, noting "there is essentially nothing or so little" to support the charge.

Valaei-Barhagh testified in his defense.  Valaei-Barhagh explained that he was struggling and depressed after losing his job during the pandemic, having trouble finding a new job, and was going through a divorce while sleeping in his van on the street at the time of his arrest.  Valaei-Barhagh stated that he had been prescribed a psychiatric medication but had discontinued it on February 5th.  However, Valaei-Barhagh soon discovered that he "wasn't [his] normal self" without it.  He described his subsequent mental state as a "weird experience" that was "like . . . thinking for two different people."

He explained that on February 7th, he had not attempted to break into the coffee stand, but was attempting to get change from the barista after giving her both a $20 and $50 bill to pay for his coffee and food which he claimed totaled just over $20.  He stated that on February 10th, his "mental situation" and the way Hulsey was acting toward him at the coffee shop led him to believe she had given him permission to enter the stand but realized when she pointed a mace gun at him that he had misunderstood and should not have been there.  On cross examination, the State asked Valaei-Barhagh if he had complained to arresting officers that Hulsey would not kiss him and asked if he had called Husley a "bitch."  Valaei-Barhagh claimed not to know if he had.

7

The State sought to impeach Valaei-Barhagh with part of the body camera footage that was previously suppressed. Defense asked that the video be shown in its entirety. Defense argued, if the State "intends to use the video of Officer Boon's body cam and he intends to impeach with portions of that video, my request would be to play the video in its entirety with the rule of completeness." The court agreed and the State had no objection. The video was played and the jury heard and saw Valaei-Barhagh exhale smoke and state "that was good." When asked what was good, Valaei-Barhagh responds "that weed." Valaei-Barhagh tells officers in the video that he has smoked "like a thousand milligram" of cannabis that day.

On the stand, Valaei-Barhagh testified that he had not really been smoking cannabis, stating "it really a lie, but what I was smoking was tobacco, no marijuana." Valaei-Barhagh denied smoking cannabis or using other drugs.

The defense subsequently requested a supplemental jury instruction on voluntary intoxication. The court denied the request because there was no substantial evidence of drug or alcohol intoxication, noting it was why he dismissed the DUI charge.

During closing, the defense argued that Valaei-Barhagh "was in the middle of a terrible mental health crisis." The jury convicted Valaei-Barhagh of criminal trespass in the first degree, a lesser included offense of the burglary charged in count one, burglary in the second degree with sexual motivation, and attempting to elude a pursuing police vehicle.

Valaei-Barhagh appeals.

DISCUSSION

Valaei-Barhagh contends that the trial court erred in refusing to provide the jury

8

with an instruction on voluntary intoxication.

A criminal defendant has a right to have the jury instructed on a defense that is supported by substantial evidence. State v. Walters, 162 Wn. App. 74, 82, 255 P.3d 835 (2011) (citing State v. Powell, 150 Wn. App. 139, 154, 206 P.3d 703 (2009)). An instruction is proper if it correctly states the law, is not misleading, and permits counsel to argue his or her theory of the case. State v. Mark, 94 Wn.2d 520, 526, 618 P.2d 73 (1980). We review de novo a trial court's refusal to give a requested jury instruction based on a ruling of law, but review for abuse of discretion whether a jury instruction should be given based on a trial court's factual determination. State v. Arbogast, 15 Wn. App. 2d 851, 869, 478 P.2d 115 (2020). Here, the refusal is based on a factual dispute of whether there was evidence of alcohol or drug use to support the instruction, making it reviewable only for abuse of discretion.

The pattern jury instruction on voluntary intoxication provides

No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, in determining whether the defendant [acted] [or] [failed to act] with (fill in requisite mental state), evidence of intoxication may be considered.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.10 (5th ed. 2021) (alterations in original). The instruction can be applied to intoxication from alcohol or drugs. State v. Hackett, 64 Wn. App. 780, 784-85, 827 P.2d 1013 (1992).

In order to receive a voluntary intoxication instruction, a defendant must show "(1) the crime charged has an element of a particular mental state, (2) there is substantial evidence of drinking [or drug use], and (3) the defendant presents evidence that the drinking [or drug use] affected the defendant's ability to acquire the required

9

mental state." Walters, 162 Wn. App. at 82 (quoting State v. Everybodytalksabout, 145 Wn.2d 456, 479, 39 P.3d 294 (2002)). The second element is a question of fact that can be proved by lay opinion testimony. Id. (citing State v. Smissaert, 41 Wn. App. 813, 814, 706 P.2d 647 (1985)). There must, however, be a showing of drug or alcohol consumption and the effect of the consumption on the user. Id. (citing State v. Dana, 73 Wn.2d 533, 535, 439 P.2d 403 (1968)). The defendant may show evidence of intoxication and its effects through either his own witnesses or through the State's witnesses. State v. Finley, 97 Wn. App. 129, 135, 982 P.2d 681 (1999).

The State agrees that the first factor requiring a charged crime with a mental state is satisfied.[3] The parties dispute whether the second and third factors are satisfied.

Valaei-Barhagh does not show substantial evidence of drinking or drug use, as required for a voluntary intoxication instruction. In fact, as his defense attorneys at trial pointed out, there was no evidence that Valaei-Barhagh was under the influence of any drugs or alcohol. There were no sobriety or drug recognition tests performed upon Valaei-Barhagh's arrest and certainly none indicating intoxication. Additionally, the arresting officer testified that although he thought Valaei-Barhagh might be under the influence because of his erratic behavior, he did not smell alcohol or cannabis on Valaei-Barhagh's person nor did he detect the smell of cannabis in the pipe Valaei-Barhagh was smoking during his arrest. On the stand Valaei-Barhagh stated that he had not used cannabis or any other drugs prior to his arrest.

The only evidence that Valaei-Barhagh did consume intoxicants were his

___

[3] Burglary and attempting to elude each require a specific mens rea. RCW 9A.52.030(1); RCW 46.61.024(1).

statements recorded on video introduced as impeachment evidence during his cross examination. "Impeachment is evidence, usually prior inconsistent statements, offered solely to show the witness is not truthful." State v. Burke, 163 Wn.2d 204, 219, 181 P.3d 1 (2008). Such evidence "may not be used to argue that the witness is guilty or even that the facts contained in the prior statement are substantively true." Id. Moreover, Valaei-Barhagh himself testified that his statements regarding drug use in the video were not true.

The cases cited by Valaei-Barhagh in support of his argument all had substantial evidence that the defendant had consumed intoxicants. See State v. Rice, 102 Wn.2d 120, 122-23, 683 P.2d 199 (1984) (finding error where the trial court refused to instruct on voluntary intoxication after defendants testified "they had been drinking beer all day and had ingested between two and five Quaaludes each" and one stated he was "so loaded he didn't feel it" when struck by a car); State v. Jones, 95 Wn.2d 616, 628 P.2d 472 (1981) (in addition to a witness description of the defendant's slurred speech and red, glassy eyes, the defendant himself testified "repeatedly" he had consumed "nine or eleven" beers before the incident); Hackett, 64 Wn. App. at 783 (blood tests revealed Hackett's blood contained nearly lethal levels of Valium and cocaine). The defense cites no case in which lay witness opinion that someone was intoxicated without evidence of consumption was sufficient to support an instruction on voluntary intoxication. As the defense explained in its opening statement, there was no such evidence of consumption in this case.

Valaei-Barhagh suggests that because there were no limiting instructions given, the jury could have considered the video evidence as substantive evidence. However,

11

the question before us is not whether the jury could have improperly considered the evidence in Valaei-Barhagh's favor. The question is whether the trial court erred in denying the defense request to instruct the jury on voluntary intoxication. Both parties understood that the video was introduced purely for impeachment purposes. No one moved to admit the video as substantive evidence and the video was not admitted as substantive evidence. Thus, the record was void of substantial evidence of drinking or drug use. It follows that the record also fails to support the third element requiring the defendant to present evidence that the alcohol or drug use affected his ability to acquire the required mental state. The trial court did not abuse its discretion in declining to instruct the jury on voluntary intoxication.

We affirm.

_Coburn, J._

WE CONCUR:

_Feldman, J._        _Dwyer, J._

12